February 24, 1937, the Florida State Bar Association, the Committee on Legal Education and Admissions to the Bar, the Executive Council, the Junior Bar Section, and the Committee on Unification of the Bar of the Florida State Bar Association filed in this Court a petition praying for the adoption of rules to regulate or, as termed by some of the briefs, to integrate the Bar of this State. Rules to effectuate the prayer of the petition were attached to and made a part of it.
The petition alleges that the preparation of the proposed rules was directed by the Florida State Bar Association at its annual meeting in the Spring of 1936, that they were in fact prepared by a committee composed of representatives from the Committee on Unification of the Bar, the Junior Bar Section, the Committee on Legal Education and Admissions to the Bar, the Committee on Professional Ethics and Grievances, and the Committee on Unauthorized Practice of the Law of the Florida State Bar Association, that all said committeemen collaborated in the preparation of said rules after extended consultation and after thorough *Page 852 
examination of the decisions and statutes of this and other States regulating the subject matter. Said proposed rules were published in the December issue of the Florida Law Journal, page 355, copy of which was mailed to each member of the Association, and are as follows:
 RULE I. Canons of Ethics.
The Canons of Professional Ethics and the Canons of Judicial Ethics heretofore adopted by the American Bar Association and herein set forth are declared to be the measure of the conduct and responsibility of the members of the Bar of this Court and of the Judges of this State over whom this Court has superintending control, and the disciplinary power of the Courts of this State may be invoked for the intentional violation thereof.
 (Here will follow in detail the official Canons of Ethics of the American Bar Association.) RULE II.
1. Effective from and after the 15th day of August, 1937, there is hereby established a Commission of Law Examiners to be appointed by this Court who, in behalf of this Court and subject to its approval and control, shall administer its rules governing admission to the Bar of the State of Florida.
2. The Commission of Law Examiners shall consist of five members of the Florida Bar, one from each congressional district of the State, one of whom shall be designated by this Court as the Chairman thereof, and each of whom shall serve during the pleasure of the Court without compensation except for actual expenses in the performance of his duties. It is hereby declared to be the purpose *Page 853 
of the Court in selecting the members to constitute the first Commission hereunder to make appointments from the present membership of the existing statutory Board of Law Examiners so far as this may be feasible.
3. The said Commission of Law Examiners shall have the power to make and adopt all reasonable rules and regulations designed to facilitate the administration of the rules of this Court governing admission to the Bar.
4. Admission to the Bar shall be only after satisfactory passage of an examination conducted by the said Commission and designed to determine the moral character and fitness of the applicant, and his legal attainments; and certificate of admission shall be issued only by this Court.
5. Until the 15th day of August, 1939, graduates of law schools of chartered universities conducted in this State which maintain a course of study heretofore approved by this Court shall be entitled to a certificate of admission without examination as to legal attainments.
6. Every application shall be made in writing on a form to be prescribed by the Commission, and shall be filed with the Commission, together with a fee of $25.00, at least six months prior to the examination. Each application show to the satisfaction of the Commission:
(a) That the applicant is over the age of twenty-one years; is a citizen of the United States; and has been a citizen and resident of the State of Florida for at least six months immediately prior to the filing of the application.
(b) That the applicant is a graduate of a standard high school, or its equivalent, and has completed two years of college work, or such work as would be accepted for admission to the third or junior year in any recognized college in the State of Florida; has satisfactorily completed a three year course of study in a standard law school holding regular *Page 854 
daytime sessions, or has satisfactorily completed a four year course of study in a standard law school holding regular late afternoon or nighttime sessions.
(c) Such other data as the Commission shall require.
7. After the Commission first shall have determined to its satisfaction that the applicant is of good moral character, it shall examine the applicant concerning his legal attainments. For this purpose, the Commission shall hold one annual examination beginning on the second Monday in July and continuing for a period of not less than three nor more than five days.
 RULE III.
1. There is hereby established a Supreme Court Commission of the Florida Bar to consist of one member from each Judicial Circuit of the State, to be appointed by this Court, who shall serve without compensation except for actual expenses incurred in administering these rules. Each member shall serve for a term of three years and until his successor takes office. The first Commission shall be appointed so that five members shall serve for one year, five for two years and five for three years as designated by this Court and, thereafter, appointment shall be for a term of three years.
2. Said Commission shall be the administrative agent of this Court for the purpose of enforcing and administering these rules and subject to the supervision and approval of this Court shall have the powers and corresponding duties:
(a) To select a Chairman among its members and a Secretary-Treasurer.
(b) To make such rules and regulations as may be necessary and proper to carry out the purpose and intent of *Page 855 
these rules, including rules and regulations for the government and control of the Circuit Commissions hereinafter established.
(c) To receive, handle, and disburse all funds provided for in these rules.
(d) To initiate and conduct investigations and take appropriate action in the same manner and with the same powers as is prescribed for the Circuit Commissions.
(e) To report its activities annually or oftener to this Court.
(f) To do and perform such other duties as may be prescribed by this Court from time to time.
3. There is hereby established in each Judicial Circuit of the State a Circuit Commission of from three to seven practicing lawyers (the number of which need not be the same in every circuit) to be appointed by this Court upon recommendation of the Supreme Court Commission of the Florida Bar, each appointment to be for a period of three years, except that the first members of said Circuit Commissions shall be appointed for such terms that there will be a majority of hold over members each year thereafter.
(a) Said Circuit Commissions shall investigate all complaints of professional misconduct of lawyers at the bars of such circuits and of unauthorized practice of law therein and shall have power to initiate such investigations.
(b) Said Circuit Commissions shall have power to summon and examine witnesses under oath and to compel their attendance and to compel the production of books, papers, and other documentary evidence. Any refusal to comply therewith shall be reported to the Circuit Court of said Circuit or to this Court for appropriate action thereon.
(c) If from its investigation a majority of any such Circuit Commission shall determine that action by the Court *Page 856 
is appropriate or advisable, then in each such case it shall make a report of the testimony, evidence, and findings, containing a brief statement of the substance of the charge, together with its recommendations thereon to the Circuit Court; provided that no such report shall be made unless and until the accused shall have had an opportunity to appear before the Circuit Commission after at least ten days notice thereof, personally, or, if absent or evasive, in such manner as may be prescribed by this Court, and to present to said Circuit Commission any evidence in his behalf. If the accused shall disregard the notice of such hearing the matter shall proceed ex parte.
4. Upon receipt of such report and recommendation of the Circuit Commission, the Court shall immediately issue thereon a rule to show cause directed to the accused, returnable to a day certain, which said rule shall briefly state the charges against the accused and the recommendation of the Circuit Commission and shall require the accused to show cause before the Circuit Court why the recommendation of said Circuit Commission should not be made effective. All defenses, both in fact and in law, must be set up and in answer to said rule, which shall be verified by the accused under oath and filed within fifteen days after service of the rule shall have been made unless the time shall be further extended by the Court. No other pleadings shall be allowed in any case. Upon the filing of the answer, the Court shall decide the matter on the record before it or on the record and such additional testimony as in the discretion of the Court is deemed necessary or advisable, and thereupon the Court shall make such order theron as to it shall seem fit and proper. If the order shall suspend or disbar any lawyer, then such order shall operate as a suspension or revocation of such lawyer's license to practice law in this State. *Page 857 
5. Upon the entry of the Court's order the entire report, evidence, and order shall be filed with the Clerk of said Court. The accused or the Circuit Commission may within twenty days after the filing of the order take an appeal therefrom to this Court. Such appeal shall be taken by the filing of notice of appeal before the Court which entered said order, whereupon the Clerk of said Court shall forthwith transmit to this Court the original report of said Circuit Commission, together with the record, all findings. recommendations, testimony, orders and any other proceedings had or taken pursuant thereto over the seal and certificate of said Clerk, which said record shall be lodged in and become a part of the records of this Court. This Court shall thereupon hear and determine said cause in such manner as to it shall seem fit and proper.
 RULE IV.
1. For the purpose of making these rules effective all lawyers in this State shall be divided into two classes, active and inactive.
Active lawyers shall include all those who have not specifically requested to be enrolled as inactive. Any lawyer may file a written application to be classified as inactive and may become active again at any time upon filing a written application and paying the current registration fee hereinafter required. No inactive lawyer shall practice law or hold office under these rules.
All active lawyers shall on or before the 20th day of January of each year hereafter pay an annual enrollment or registration fee of $3.00. Such enrollment fee shall be paid to the Secretary-Treasurer of the Supreme Court Commission, but Judges of Courts of Record need not enroll during their terms of office.
2. The Secretary-Treasurer of the Supreme Court Commission *Page 858 
shall on February 10th of each year deliver to the Clerk of the Circuit Court of each county in the State of Florida a duly certified list of the names of those active lawyers residing in said Circuit who have paid the fee above required and a copy of said list shall be posted in a conspicuous place in the office of said Clerk. The Secretary-Treasurer shall also on February 10th publish each year in a newspaper of general circulation published in each county of the State a list of the active lawyers residing in said Circuit who have registered or enrolled for that year.
3. No person shall be permitted to practice law in this State after the 10th day of February of each year unless he has paid the registration or enrollment fee required, and failure to pay such fee shall result in his automatic suspension. He may be reinstated upon paying to the Secretary-Treasurer of the Supreme Court Commission such registration or enrollment fee for the current year plus a penalty of $3.00. Upon reinstatement the Secretary-Treasurer shall duly notify the Clerks of the Circuit Court in the circuit in which the person resides of such reinstatement and shall cause his name to be added to the posted list. The names of all persons who may be admitted to practice in any year after February 10th and who are enrolled as active shall, upon their admission, also be certified by the Secretary-Treasurer to the Clerks of the Circuit Court of the respective circuits of their residences, and their names shall be added to the posted lists, but the Secretary-Treasurer shall not be required to publish the names of said additions.
4. If any active lawyer shall fail to pay said registration fee for more than three consecutive years, he shall be deemed to have abandoned his license to practice law and his name shall be stricken from the roll of lawyers. *Page 859 
5. It shall be the duty of the Circuit Commissions to examine the lists so posted in their respective circuits and if they have evidence of any person engaging in the practice of law while under suspension to notify said lawyer that if he does not become reinstated within ten days after receipt of such notice, said Commission will take appropriate action under these rules.
6. All enrollment or registration fees shall be held by the Secretary-Treasurer of the Supreme Court Commission for the purpose of enabling the Supreme Court Commission and other officials herein named to accomplish the purpose of these rules as herein stated, and said money shall be disbursed by him only upon warrants duly authorized by the Supreme Court Commission and properly signed by the officers of the same.
7. The Secretary-Treasurer shall receive such compensation for his services as may be recommended by the Supreme Court Commission and approved by this Court.
8. The Secretary-Treasurer shall give bond to the State of Florida, conditioned upon the faithful performance of the duties imposed upon him by virtue of these rules, said bond to be for __________ ($__________) Dollars, the premiums for which shall be paid out of the moneys in his possession.
9. Nothing in these rules shall be construed as a limitation upon the powers of the Supreme Court to govern the conduct of its officers, but the same may be modified or added to from time to time as the Court may deem proper, and any appointment made hereunder may be revoked at will. Nor shall these rules be construed as any limitation upon the rights of any individual to seek any remedy afforded by law. *Page 860 
Summarized, Rule One proposes the adoption of the Canons of Professional Ethics and the Canons of Judicial Ethics of the American Bar Association as the measure of conduct and responsibility of the members of the bar of this Court. Rule Two provides for the appointment of a commission of Law Examiners by this Court with power to promulgate and enforce all rules affecting admissions to the bar, it requires all applicants for admission to the bar to take an examination, and, after August, 1939, withdraws the courtesy of admission extended to graduates of approved law schools. It requires each applicant to be twenty-one years of age and a citizen of the State of Florida for at least six months prior to the examination. It requires all applicants to be a graduate of a standard high school, or its equivalent, to have completed two years of college work, and to have graduated from a three year standard law school holding regular daytime sessions or a four year standard law school holding regular afternoon or night sessions. One examination annually is required to be given.
Rule Three provides for a Supreme Court Commission of the Florida Bar to be composed of one member from each Judicial Circuit, appointed by this Court for three years and to serve without compensation. The duties of said commission to be the administrative agent of this Court to enforce these rules, to promulgate rules and regulations for that purpose, to initiate and conduct investigations, to report its activities to this Court and perform such other duties as the Supreme Court may impose.
Rule Three further provides for the creation and appointment by this Court of a Circuit Court Commission in each Judicial Circuit of from three to seven practicing lawyers to serve for three years. The duties of Circuit Court Commissioners shall be to investigate all complaints of professional misconduct on the part of members of the bar, to *Page 861 
summon and hear witnesses under oath and to make a complete report of their investigation and recommendation to the Circuit Court. The Circuit Court is required to try the cause and provision is made for appeal to this Court from his judgment.
Rule Four is designed to prevent unauthorized practice of the law. It provides for classifying all members of the bar as "active" or "inactive" and the enrollment of each class separately. It imposes a registration fee of three dollars per annum on each lawyer enrolled as "active" and suspends him automatically on the tenth day of February if the fee is not paid. He may be reinstated by payment of an additional fee of three dollars, but if he fails for three years to pay the fee, he is stricken from the roll of "active lawyers." The lists of active attorneys are required to be furnished the Circuit Court Clerks on the tenth day of February of each year, who are required to post them at a conspicuous place in the Clerk's office. All but "active" attorneys are prohibited from practicing law.
When the petition was filed, notice was published under the seal of this Court inviting any attorney who might so desire, to file written briefs in support of or in opposition to its approval as he may be advised. Local Bar Associations filed resolutions and a number of lawyers filed briefs in response to this notice and on March 26, 1937, an oral argument was heard in which able counsel participated, some approved while others disapproved the adoption of the petition. Still others approved its adoption with reservations.
In fine, the petition seeks to have this Court take charge of and assume full responsibility for the following: admissions to the bar, disbarment for unprofessional conduct and regulation of unauthorized practice of the law. Its approval is urged on the theory that these functions are inherent *Page 862 
in the Courts and that they cannot be deprived of them by legislative fiat. Having been presented on this theory, this Court is not limited in its consideration of the petition to the same rules that it would be limited by if considering a controverted question between individual litigants. The policy, reasonableness or validity of the petition may be gone into.
As to Rule One, it is sufficient answer to the petition to say that on November 4, 1936, we entered an order adopting the Canons of Professional Ethics and the Canons of Judicial Ethics of the American Bar Association as to the measure of conduct and responsibility for the members of the bench and bar of this State. See 125 Fla. 501.
In the matter of regulating admissions to the bar and disbarment of its members for unprofessional conduct as proposed in Rules Two and Three, we are confronted with an anomalous situation. The inherent power of the Court to prescribe rules is sound, but has some limitations. It may be defined by the Constitution and is so defined in some states. Space will not permit a full exposition of this question. If not defined by the Constitution. We approve the nigh universal doctrine that the power to regulate such matters by rule is inherent in the Courts and cannot be taken from them by the Legislature. Ex Parte
Secombe, U.S. 9. 15 L. Ed. 565; Ex Parte Garland, 71 U.S. 333,18 L. Ed. 366; In re Cannon, 206 Wis. 374, 240 N.W. 441; In re
Richards, 333 Mo. 907, 63 S.W. (92d 672; In re Bailey, 30 Ariz. 407,248 P. 29; In re Bruen, 102 Wn. 472, 172 P. 1152; Inre Olmstead, 292 Pa. 96, 140 A. 634; Ex Parte Steckler,179 La. 410, 154 So. 41; Rosenthal v. State Bar Examining Committee,116 Conn. 419, 165 A. 211; In re Lavine, 2 Cal.2d 324, 41 P.2d 161; Hanson v. Grattan, 84 Kan. 843, 115 P. 646; People,ex rel. Colorado Bar Association, v. Irwin, 60 Col. 177, 152 P. 905; *Page 863 
Danforth v. Egan, 23 S.D. 43, 119 N.W. 1021; In re Application for License to Practice Law, 67 W. Va. 213, 67 S.E. 597; In re
Leech, 134 Ind. 665, 34 N.E. 641; State Bar Commission, ex rel.
Williams, v. Sullivan, 35 Okla. 745, 131 P. 703; In re Platz,42 Utah 439, 132 P. 390; In re Day, 181 Ill. 73, 54 N.E. 646.
It is pointed out in one of the briefs that only New York, Inre Cooper, 22 N.Y. 67, and North Carolina, In re Applicants for License, 143 N.C. 1, 55 S.E. 635, 10 L.R.A. (N.S.) 288, and perhaps Florida have deviated from this rule.
The general rule is fully discussed in American Jurisprudence, Volume 5, at page 271, et seq.; R.C.L., Volume 2, page 941, etseq.; 66 A.L.R. 1512 and 81 A.L.R. 1064, where the foregoing and other cases are cited.
Dicta in State v. Kirke, 12 Fla. 278, and Gould v. State,99 Fla. 662, 127 So. 309, may at first blush appear contrary to the general rule here approved, but careful examination discloses that the dicta in these cases were merely statements of the early common law rule under which admission to the bar was deemed to be a legislative function, but that it was under the Act of 4 Hen. IV, Chapter 18, made a judicial function which it continued to be and was so when the common law of England was adopted by statute in this State (Section 87, Compiled General Laws of 1927). Many of the cases cited in support of the general rule hold that the Legislature may in the exercise of its police power prescribe rules and regulations for admission to the bar which the Courts will respect, but that such rules and regulations have reference to minimum requirements and must not deprive the Courts of their inherent power in the matter. State, ex rel. Clyatt, v. Hocker,39 Fla. 477, 22 So. 721.
We are here confronted with a practical situation in which *Page 864 
the Courts of this State failed at the proper time to assert their prerogative in the premises and in so far as the record discloses have not before been importuned to do so. On the other hand, the legislative council of the Territory of Florida, at its first session, passed an Act approved August 12, 1822, providing for the admission of attorneys to practice law and this Act was later substituted by the Act of November 10, 1828. An Act was passed November 20, 1829, admitting Georgia and Alabama lawyers to practice in this State and the Constitution of 1868, by Section 21 of Article VI, provided for the admission of foreign attorneys to practice law in Florida.
In 1897, the Legislature enacted Chapter 4539 creating a board of legal examiners to prescribe and enforce rules for admission to the bar. This Act was held invalid in State, ex rel. Clyatt, v. Hocker, supra, the effect of which was to leave the Act of November 10, 1828, in effect which continued to be until 1907, when Chapter 5650 was enacted placing the matter of admissions to the bar in the hands of the Supreme Court. In 1925, Chapter 10125, was enacted creating the State Board of Law Examiners with power to prescribe and enforce rules for admission to the bar.
In the matter of disbarment for unprofessional conduct, Section 7 of the Act of November 10, 1828, provided for striking the names of attorneys from the roll for failure to pay over money collected by them for clients. The first and only Act dealing exclusively with the subject of disbarment was Chapter 4379, Acts of 1895.
It thus appears that the Legislature has for more than one hundred years regulated the matter of admissions to the bar and the disbarment of attorneys for unprofessional conduct. The course of the Legislature has been acquiesced in by the people, has been resisted by no one, and has *Page 865 
not only been acquiesced in, but repeatedly approved by the Courts.
We approved some features and held invalid other features of Chapter 4539, Acts of 1897, in State, ex rel. Clyatt, v. Hocker,supra. We approved Chapter 5650, Acts of 1907, by prescribing a course of study, holding bar examinations, and admitting attorneys under it for almost twenty years. We approved Chapter 10125, Acts of 1925, by prescribing courses of legal study and by admitting graduates of law schools under it for more than ten years and we have approved Chapter 4379, Acts of 1895, Section 4172, Compiled General Statutes of 1927, by litigating disbarment proceedings under it in the following cases: State, ex rel. Kirk, v. Maxwell, 19 Fla. 31; State, ex rel. Rude, v. Young, 30 Fla. 85, 11 So. 514; State, ex rel. Fowler, v. Finley, 30 Fla. 325,11 So. 674; State, ex rel. Wolfe, v. Kirk, 12 Fla. 278; State, exrel. Kehoe, v. McRae, 49 Fla. 389, 38 So. 605; Hogan v. State,89 Fla. 388, 104 So. 598; Gould v. State, 99 Fla. 662, 127 So. 309, and others.
It thus appears that there was in part, at least, a concurrent authority on the part of the Courts and the Legislature. The Legislature entered the field and regulated for more than one hundred years. The Courts acquiesced and approved repeatedly. Approval of proposed rules two and three would amount to an attempted repeal of the Acts of the Legislature prescribing requirements for admission to the bar and disbarring for unprofessional conduct. If it could be done, it would be unbecoming and improper to attempt the results sought in this way. If a change of policy is to be effected, it should be done in orderly fashion after the Legislature has withdrawn from the field.
At the oral argument, resistance to the petition in its entirety was voiced by a few, it was supported by others, but the main assault was directed to sub-section (b) of paragraph *Page 866 
six of rule two requiring applicants for the bar examination to have completed two years of college work and the prescribed course in a standard three year law school or if conducted at night, a four year law school. The objection to these requirements being that they would bar from admission many worthy applicants who had in good faith commenced the study of law without such requirements and who for financial and other reasons could not meet them.
This Court is authorized by rule to prescribe courses of study to be pursued as a prerequisite for admission to the bar. Section 4180, Compiled General Laws of 1927. This Act was a part of Chapter 10125, Acts of 1925, creating the State Board of Law Examiners, but like authority was conferred by Chapter 5650, Acts of 1907. In January, 1936, we approved a rule requiring all applicants for the bar examination to have a high school education or its equivalent. At the same time and even long prior to this, we had prescribed the following courses of study as a preparation for the bar examination: Jurisprudence, Pleading and Practice in the Common Law and Equity, Evidence, Corporations, Municipal Corporations, Common Carriers, Bailments, Agency, Contracts, Domestic Relations, Executors and Administrators, Real Property, Wills, Bills and Notes, Torts, Elementary Law, Constitutional Law, Criminal Law and Procedure, Trusts, Construction and Interpretation of Laws, Judicial Precedents, Legal Ethics, and leading cases on all these subjects. Florida statutes and rules of practice. This Court is empowered to add to, take away from, and regulate the time and manner in which these courses may be pursued.
A college education and three years in an approved law school has been adopted by the American Bar Association and three-fourths of the States as a proper standard for *Page 867 
admission to the bar. We unqualifiedly recommend such a standard, but we are encompassed by too much evidence to the contrary to even assert that it should be the only road to admission. We would not in the least minimize scholarship, but we do not consider it the most important part of a lawyer's equipment. It is important, of course, but in our zeal for scholastic attainment, we are overlooking and permitting to atrophy human attributes for which no amount of erudition will compensate. Let us say for example that seasoned character, a disciplined mind, industry, and legal lore are the primary essentials of a good lawyer. Other essentials might be named, but I cannot conceive of a good lawyer without these and the secondary ones that are comprehended in them.
Seasoned character has to do with one's appreciations. It is generated in an environment of stern realities and rigid discipline. It grows strong by surmounting obstacles, but degenerates if permitted to sail nothing but a smooth sea. The lawyer possessed of it appreciates the distinction between his own money and that of his client, and his conviction of that distinction is so intense that he will go hungry and suffer his loved ones to do likewise before he will misappropriate the latter. Seasoned character is gilt-edged collateral at the bank and is to the good lawyer what the foundation is to his home. It contemplates moral sense, that sense by which the lawyer conceives and imposes on himself a correct rule of conduct to guide him in social and professional relations. It is by such a rule that he chooses between right and wrong and only through it that he is rescued from his own vices. It embraces intuition, the attribute in man that is akin to instinct in the lower animals and more than any other, made Marshall, Taney, Miller, Harlan and White the greatest judges in this country. It is the most important factor in the lawyer's *Page 868 
equipment; it holds honor and integrity above price, regards sacred the rights of others and is the only virtue that withstands recession and decay in man or society. A lawyer may be great without broad scholarship; he cannot be great without character and intuition. Seasoned character comprehends a sense of professional ethics which can be best improved by excluding from the profession all those with a tendency to a low standard of moral conduct. Failure in the observance of proper standards of professional conduct is more ruinous to the profession than ignorance of the law or the lack of skill in its execution.
Next to seasoned character, a disciplined mind is the most important implement in a lawyer's equipment. There are unmistakable indicia by which it is known; it marshals law and fact and travels by the syllogism or logical process from premise to conclusion. Law being the perfection of reason, and this being a country of laws and not of men, it reasons from a legal premise rather than from election returns. It is intolerant of conclusions reached by jack-out-of-the-box processes. It connotes the capacity and patience to analyze involved legal phenomena and from them extract reasonable deductions. The disciplined mind is a discriminating mind. Under common law practice like ours, a great part of the lawyer's energy is expended in discriminating; he must discriminate between a declaration and a bill of complaint; he must know when to appeal and when to take a writ of error and vice versa. We have seen him fail in both instances. The disciplined mind is intellectually as well as morally honest and approaches the bar with a constant awareness that the possessor is in the business of administering justice rather than in a struggle for a judgment. In the forum, it is the lawyer's most prized possession; it enables him to plumb the depths; gives him a sense of proportion; makes him a safe counsellor, and with all determines *Page 869 
his efficiency without which legal lore would be of no value.
Industry is the open sesame that unlocks the door to the lawyer's storehouse. A lazy lawyer is a most abominable nuisance. It matters not the degree of his character nor the quality of his mind, if he is not physically and mentally industrious, he has no place at the bar. It is a complement to seasoned character and mental discipline, but it is as essential to them as gas is to the motor. The lack of it is a pain to the bench, a reproach to the bar, and the practice of the technique of the highwayman on the client. Failure to exercise it from start to finish of one's career spells inefficiency and professional lag.
Legal lore is the product of industry, multiplied by zeal for the law. The persistence of the industry and the intensity of the zeal determine the degree of the lore. Actuated by efficiency, it is an indispensable part of the lawyer's equipment, but without the latter, it is inert and has no practical value. It embellishes character, is a prerequisite to professional standing, and enables the practitioner to translate his opportunity into success at the bar. A considerable portion of the lawyer's learning should be devoted to the social sciences, enough in fact to create within him a social conscience. This more than any other influence will give him a sympathetic understanding of the age in which he lives and enable him as a lawyer to discharge his public responsibility.
Now let us see from what source the prerequisites of a good lawyer derive. If seasoned character and habits of industry are not formed before one reaches college, the chances are they will never be formed. Experience teaches that the only sure way a lawyer can acquire these virtues is to select his mother carefully. A period in college as long as Moses tended Jethro's sheep would not add a whit *Page 870 
to them. As much may be said of what he has of intuition and efficiency. Mental discipline is also largely acquired before one reaches college or law school; it is doubtless improved by this experience. These attributes are acquired in the school of practical experience, about the fireside, the farm, the shop, the store, the school, and the religious center where we imbibe precepts, compromise, give and take, make concessions, overcome difficulties and make our dreams come true. Legal lore, then, with a measure of mental discipline, is the most that one may expect from the law school. The course in college and law school is predominantly cultural or aesthetic and necessarily technical. When at best such a small percentage of one's career is spent there, it would be absurd to contend that its influence would extend beyond what its course of study offered.
But is the law school the only source from which legal lore may be acquired? Its advantage certainly cannot be questioned, but Dr. Flexner tells us that the law schools do not produce lawyers; their part is largely limited, said he, to training in method, technique and inspiration. The law school curriculum is designed to cover in outline the realm of the law so that the student who completes it comes to the bar with a working knowledge of the various branches of the law. His legal knowledge is classified or systematized so that he applies it with ease and facility. It gives him a degree of efficiency difficult to acquire otherwise. In this lies the distinct advantage the law school student acquires over the student who pursues his law course in a law office, or under a private tutor. Studied in this manner, one misses the contact of fellow students and maybe the influence of a great teacher. His legal course may not be so well planned and synthesized. His legal lore may be thrown into his mind like castaways in an old attic or when completed there may be "spotted" or unlearned areas somewhat *Page 871 
like the unproductive ones that appear in a field of grain when fertility and seasonal conditions are irregularly distributed.
But notwithstanding these apparent handicaps, there are too many living examples of great lawyers who learned their lesson by personal application in a law office or by the aid of a private tutor to assert that it cannot be done again. In fact, this method of acquiring it has its distinct advantages and he who has the ingenuity to convert his handicaps into stepping stones has the stuff that great lawyers are made of. College and legal education are desirable, but in a world of practical realities where our successes and failures are measured by tangible results, it is rather remarkable how success has veered from "I.Q." rating. The Carnegie Foundation has found that, measured by material results, only fifteen per cent. of one's success is due to technical knowledge, eighty-five per cent, being due to other factors. We do not approve or disapprove this finding because we do not know its basis, but it gives us something to think about. In our judgment, the evils which petitioners seek to remedy arise from a lack of a correct standard of moral discipline rather than a lack of formal schooling. We are convinced, however, that the best interest of the profession and the public demands a higher standard of professional preparation on the part of those who seek admission to the bar.
There are many reasons supporting this conclusion. In the first place, the realm of applied law is infinitely broader than it was a generation ago. It arises from much more complicated situations and is much more complex in administration than ever before. In the last thirty years, the case law of Florida has more than doubled; it has grown in like proportion in every State in the Union and equally as great if not greater in the Federal Courts. New areas, such *Page 872 
as administrative law, radio law, automobile law, federal procedure, and new aspects of damages unknown a little while ago are now recognized as important branches of the law. In the meantime, the criminal law, corporation law, constitutional law, real property law, the law of domestic relations, and in fact every other division of the law has grown immeasurably both in volume and complexity of situation out of which it arises.
In the second place, there are economic reasons that warrant more rigid restrictions on admission to the bar. Both the law practice and those who can make a respectable living by it are necessarily limited. Whether or not we approve it, every learned profession is raising its standards, the law schools are raising their standards, certainly the Courts must not lag when authorized to prescribe standards in the same field. If the standards for admission to the bar remain low while those of other professions are going up, it necessarily follows that the law becomes the refuge and last resort of the derelicts barred by standard from other professions.
In the third place, practice of the law is not an inherent right. It is a privilege or franchise granted by the State and, being so, its exercise may be regulated in the interest of the public. In a democracy that interest is a peculiar one and the lawyer's responsibility is clothed with a sense of duty not found in any other form of society. The cardinal point in that responsibility is that in every professional relation, the lawyer's obligation and allegiance is first to Country and second to client and under no circumstances is he warranted in subduing the former to the latter. Some of the ablest lawyers in this country have in their zeal for client devised unwarranted ruses to circumvent the law and thereby sacrificed the confidence of the public.
We think therefore that as a minimum requirement for *Page 873 
admission to the bar, all applicants who begin preparation after January 1, 1938, and who have not graduated from an A grade law school, or a four year part time law school, should, in addition to a high school education or its equivalent, furnish satisfactory proof that they have pursued diligently for a period of not less than three years in a lawyer's office or under guidance of a private tutor or both, the courses of study approved by this Court for all law schools as authorized by Section 4180, Compiled General Laws of 1927. Before admission to the examination, the Board of Law Examiners may require written abstracts of the courses pursued and a certificate from the tutor or lawyer in whose office the preparation was made or both that the prescribed work was done, and that the applicant has assisted in the performance of such other matters as arise in a general practice. Any time not less than half a school year that the applicant spends in an accredited law school may be credited on this period if evidence is furnished that his work there was creditably done.
We are conscious of the fact that any arbitrary rule of this character will meet with objection and that as no two intellects are of like capacity, it will work a hardship on the more apt ones. The answer to this objection is that in a democracy, all social regulations must as near as possible conform to the law of averages, those above and below being required to adjust themselves to it. The law schools make no exceptions in such cases and in a complex society, all regulations must contemplate the group rather than the individual. If the law had remained static like a table of logarithms or the multiplication table, there might be no argument to support more thorough preparation, but, as pointed out, the law is a rapidly expanding science and the question of preparation for the bar is one of orientation as well as the mastery of legal technique. *Page 874 
The question of suppressing unauthorized practice of the law has not been raised in this jurisdiction before. Section 4 of the Declaration of Rights, Florida Constitution, provides that all Courts in this State shall be open to every person for any injury done him in his lands, goods, person, or reputation, that he may have remedy in due course of law.
Certainly the practice of law is limited to those who meet the requirements for and have been admitted to the bar. In our view, this provision of the Constitution applies to members of the bar or bar associations and affords them ample relief, if the fact is brought to the attention of the Courts in appropriate proceedings, that the legal profession is being invaded by those not authorized to practice law. We are not confronted with a concrete case and do not feel that we have facts before us sufficient to prescribe a rule or rules that would be adequate. Rhode Island Bar Association v. Automobile Service Association (R.I.) 179 A. 139, 100 A.L.R. 226; State v. Dudley (Mo.) decided February 19, 1937.
It follows that sub-paragraph (b) of paragraph six, proposed Rule Two, as restated herein or in form and substance similar to the restatement herein, is granted, but in all other respects the petition is denied.
It is so ordered.
ELLIS, C.J., and WHITFIELD, BROWN and BUFORD, J.J., concur.
CHAPMAN, J., disqualified.
 ON REHEARING.