December 2, 1948, the Committee on Bar Integration, Florida State Bar Association, exhibited its petition, praying for a rule integrating the Florida Bar. A similar petition was filed in 1937, praying for the adoption of rules to regulate procedure and integrate the bar. Our opinion in response to the latter petition is reported in 134 Fla. 851, 186 So. 280, but the question of integration as treated here was not considered.
The petition in this case alleges that in September 1947, the Florida State Bar Association made a complete roster of the Florida Bar, which was found to contain the names of 2,700 lawyers. Letters containing the following ballot were mailed to each name on the roster, requesting their vote on the question of bar integration. *Page 904 
 Bar Integration Ballot
I am in favor of the integration of the Bar of the State of Florida which will require every member of the Bar of Florida to belong to the integrated bar and the payment of $5.00 annual dues and the supervision of the Bar's disciplinary action by direct review of the Supreme Court.
(If you favor this, mark an X in the box ()
(If you do not favor integration of the Bar mark an X in the box) ()
______________________ You may sign your name here if you care to, but signature is not necessary to have your vote counted.
Of the 2,700 ballots mailed to the members of the bar, 1,631 were voted and returned. Of the returned ballots 1,131 voted in favor of integration and 500 voted against integration. The opponents of bar integration challenge the number 2,700 as being an accurate count of the practicing attorneys in the State but our investigation reveals no support for this challenge. We are of the view that the referendum was fairly conducted.
On January 18, 1949, the petition to integrate was argued pro and con, the argument being directed to these points: (1) Has this court inherent power to integrate the Florida Bar? (2) Has this court the power to require the payment of a membership fee as an incident to its power to integrate? (3) Would integration best serve the interest of the bar and the public? The gist of the opposition to integration was directed to these points: (1) That if accomplished at all it should be done by legislative act rather then by rule of court. (2) Bar organization should be voluntary, the integrated bar is a coerced organization. (3) Bar integration contemplates discipline by police methods rather than by judicial process. (4) The integrated bar will not eliminate the unethical lawyer, and (5) Integration will convert the bar into a closed shop.
The integrated bar movement was initiated in this country about 35 years ago by the American Judicature Society and since that time at least 27 States have adopted it. None of them have returned to the old system of voluntary organization, but all commend the integrated bar highly. Letters received from the States in which the integrated bar has been tested, recommend it as a vast improvement over the voluntary organization and proclaim that they would under no circumstances return to the old system.
When we say the bar is integrated we mean that every lawyer within a given area has membership in a cohesive organization. An organization of less than all the members of the bar in a given area would not be an integrated bar. The area may be the state, the county or the city. The integrated bar has also been defined as the process by which every member of the bar is given an opportunity to do his part in performing the public service expected of him, and by which each member is obliged to bear his portion of the responsibility. Annotation 114 A.L.R. 161. Another claim to merit is that it provides a fair and equitable method by which every lawyer may participate in and help bear the burden of carrying on the activities of the bar instead of resting that duty on a voluntary association composed of a minority membership.
So the purpose of bar integration is in no sense punitive and there is not a case on record in which it has been employed as a legal straight jacket for disciplinary purposes. In some states it has no part whatever in disciplinary measures. In the states where bar integration has been adopted its major energies are directed to projects designed to improve the administration of justice, projects that awaken an interest in the science of jurisprudence, that stimulate professional interest and that give the bar a just concept of its relation to the public. In some states the question of unlawful practice of the law, educational qualification for admission to the bar, and the discipline of members for unprofessional conduct, have been included in the integration agenda, but they are incidental to the major energies of the integrated bar. *Page 905 
The integrated bar of California has promulgated the best pattern for an integrated bar program to which our attention has been directed. The Bar of California was integrated in 1927 by legislative act, St. 1927, p. 38, and is administered by a Board of Governors, consisting of 15 members, five elected each year for a three year term, without compensation. It has a well staffed office through which it administers, (1) admissions to the bar under an act of the legislature clothing it with powers similar to those vested in the State Board of Bar Examiners in this State, (2) Under direction of the courts and with the right of appeal, it investigates and prefers charges of unprofessional conduct. (3) In matters improving the administration of justice the integrated bar of California prepares and fosters bills in the legislature. It has collaborated with the Judicial Counsel in the preparation and promulgation of rules of procedure and in many other ways has done much to improve the administration of justice. (4) The integrated bar of California has enlisted the cooperation of the State Bar, the local Bars, the Deans of the accredited Law Schools and the University Extension Department of California in providing legal aid clinics, in different parts of the State as circumstances require, it prepares pamphlets and bulletins on legal subjects and makes them available to each member of the bar. Through these facilities the bar is kept informed on questions of procedure, taxation, Federal decisions and other subjects that constantly arise. (5) In the matter of unlawful practice of the law, the integrated bar of California has worked out an agreement with the California Bankers Association, the California Bank and Title Association, the Insurance Adjusting and allied Associations whereby the line between law practice and law activity has been defined. The line so defined, has generally been observed and has solved the illegal practice controversy in that State. (6) In the field of public relations the integrated bar of California has made overtures to the public in aid of making the administration of justice more effective. It publishes a Journal with a mailing list of 16,000, giving in detail the accomplishments of the integrated bar. (7) Summarized, the integrated bar of California has brought about a bond of unity and cooperation on the part of the bar, the courts and the public for a more efficient administration of justice, and the wise manner in which it has administered its responsibility has ingratiated it in public esteem. It reports its activities regularly through 500 newspapers and carries a radio program over more than 30 radio stations at irregular intervals to render an account of its activities.
To support such a program the integrated bar of California has a membership of 15,000 and a budget of $250,000 per annum which is of course out of the reach of the Florida Bar. It is detailed here for the purpose of giving the objectives of bar integration. Its end result is a stronger and better informed bar and it has so enlarged the confidence of the public in the integrated bar of California, that its aid is sought for recommendation to judicial appointments and it is called on frequently to sponsor movements for the common good. Whatever it fosters it has the advantage of being able to call to its aid one hundred per cent of its members.
Now let us consider the question of whether or not this court has inherent power to integrate the bar of Florida by rule of Court.
Inherent power arises from the fact of the Court's creation or from the fact that it is a court. It is essential to its being and dignity and does not require an express grant to confer it. Under our form of government it is the right that each department of government has to execute the powers falling naturally within its orbit when not expressly placed or limited by the existence of a similar power in one of the other departments. In re Integration of Nebraska State Bar Association, 133 Neb. 283, 275 N.W. 265, 114 A.L.R. 151. Inherent power should be exercised with sound discretion. It should never be exercised arbitrarily or in a despotic manner, neither should it be the product of pressure, passion or prejudice.
In Integration of Bar Case, 244 Wis. 8, 11 N.W.2d 604, 619,12 N.W.2d 699, 151 *Page 906 
A.L.R. 586, the question under consideration was answered in the affirmative, the court saying: "It has been held by every court to which the question has been presented that the court has power to integrate the Bar and that the integration of the Bar is a judicial and not a legislative function." In re Integration of State Bar of Oklahoma, 185 Okla. 505, 95 P.2d 113, 116, the Supreme Court of Oklahoma expressed the same view in these words: "We conclude that this court has the inherent power and authority to provide rules creating, controlling, regulating and integrating the Bar of the State of Oklahoma." On June 16, 1944, the Supreme Court of Missouri integrated the bar of that state by rule of Court. See Rule 7, Supreme Court Rules, 352 Mo. XXXI.
As already pointed out, bar integration in this country has been accomplished in 27 states. In Nebraska, Oklahoma, Missouri and others it was done by Rule of Court prescribing the powers and functions of the integrated bar. In some states it was accomplished by Act of the Legislature, incorporating the bar and prescribing its powers and functions, and in other states it was accomplished by an Act of the Legislature, authorizing the Supreme Court to integrate the bar and prescribe its functions.
The courts have taken the initiative in the bar integration on the theory that bench and bar have a responsibility to support the honor and dignity of the profession and to improve both the law and the administration of justice. The act of the legislature incorporating the bar and those authorizing the court to do so have recognized bar integration to be a judicial function, in that they often do nothing more than withdraw from the field and memorialize the courts to proceed to integrate. Integration in Oklahoma and Missouri was preceded by a history very similar to that in this state, in that in Oklahoma it was accomplished by rule of court after it was first authorized and then repealed by the legislature and in Missouri it was accomplished by rule of court after three successive refusals by the legislature to do so.
Those interested in exploring this phase of bar integration further might pursue its chronology and results in North Dakota and Alabama where it has been in effect since 1921, Idaho since 1923, New Mexico since 1925, California since 1927, Nevada since 1929, Mississippi since 1930, South Dakota and Utah since 1931, Washington, Arizona and North Carolina since 1933, Kentucky since 1934, Oregon and Michigan since 1935, Nebraska since 1937, Virginia since 1938, Texas and Wyoming since 1939, and Louisiana since 1940. An extended citation of authorities will be found in Re Integration of Nebraska State Bar Association, 133 Neb. 283, 275 N.W. 265, 114 A.L.R. 151, 157, page 161. See also In re Sparks, 267 Ky. 93, 101 S.W.2d 194; Campbell v. Third District, Committee of Virginia State Bar, 179 Va. 244, 18 S.E.2d 883; Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977; Petition of Florida State Bar Association et al., 134 Fla. 851, 186 So. 280.
Does the power to integrate the bar carry with it the power to impose a membership fee for the support of bar integration activities?
If the membership fee could on any sound basis be construed as a tax, undoubtedly it should be imposed by the legislature under its police power. While the police power is generally considered an exclusive power of the legislature, it may for reasons not necessary to detail here, be exercised by the Courts. Workmen's Compensation Board of Kentucky, v. Abbott, 212 Ky. 123,278 S.W. 533, 47 A.L.R. 789.
A membership fee in the bar Association is an exaction for regulation only, while the purpose of a tax is revenue. In City of Jacksonville, v. Ledwith, 26 Fla. 163, 7 So. 885, 9 L.R.A. 69, 23 Am.St.Rep. 558, this distinction was recognized. It was also recognized in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. These cases also recognize the rule that the power to regulate may carry with it the imposition of a charge for that purpose. If the judiciary has inherent power to regulate the bar, it follows that as an incident to regulation it may impose a membership fee for that purpose. It would not be possible *Page 907 
to put on an integrated bar program without means to defray the expense. We think the doctrine of implied powers necessarily carries with it the power to impose such an exaction.
The requirement of membership in the State Bar Association with the payment of a membership fee as a condition precedent to practice law has been upheld in these States. Hill v. State Bar of California, 14 Cal.2d 732, 97 P.2d 236; In re Mundy, 202 La. 41,11 So.2d 398; Ayres v. Hadaway, 303 Mich. 589, 6 N.W.2d 905; In re Platz, 60 Nev. 296, 108 P.2d 858, and notes in 114 A.L.R. 165; Integration of Bar Case, 244 Wis. 8, 11 N.W.2d 604,12 N.W.2d 699, 151 A.L.R. 586; In re Integration of State Bar of Oklahoma, 185 Okla. 505, 95 P.2d 113; Supreme Court Rules 352 Mo. XXXI. In some of these cases the membership fee was imposed by legislative act while in others it was imposed by rule of Court. In re Integration of Nebraska State Bar Association, 133 Neb. 283, 275 N.W. 265, 114 A.L.R. 151, 165.
Attorneys are not, under the law, State or County Officers, but they are officers of the Court and as such constitute an important part of the judicial system. As was said in the case of In re Integration of Nebraska State Bar Association, supra, the law practice is so intimately connected with the exercise of judicial power in the administration of justice that the right to define and regulate the practice naturally and logically belongs to the judicial department of the government. In Laughlin v. Clephane, et al., 77 F. Supp. 103, the United States District Court for the District of Columbia reviewed another phase of the Court's power to admit attorneys and impose fees and there held that the admission and disbarment of attorneys was a judicial and not a legislative act, that apart from any statutory law, a court of record has the inherent power to provide the necessary assistance as a means of conducting its business. In so doing, it may impose such fees as it may deem proper, that said fees are not a tax but may be dispensed as the court directs. The last cited case also approves the theory that while the legislature may impose minimum standards for admissions and regulation of the bar, the courts have inherent power to impose additional requirements.
As a concluding thought on the point in question, we think the referendum of the bar association is entitled to serious consideration. An analysis of the ballot quoted in the forepart of this opinion reveals an affirmative vote on three points: (1) That the bar be integrated. (2) That a $5 annual membership fee be imposed, and (3) all disciplinary action be reviewed by the Supreme Court. The result of the referendum shows that more than half the bar participated and that all three questions were approved by more than two to one vote. We think the independence of the judiciary is something more than a tinkling symbal, in fact, we think it means that in those matters which are purely and essentially judicial the judiciary may chart its course without interference from other departments. Since the bar is such an important part of the judicial system and has expressed itself so decisively on this point, we would not be remiss to adopt the deduction of Mr. Dooley about the Supreme Court of the United States and "follow the election returns."
The concluding question is whether or not bar integration is good public policy and calculated to serve the best interests of the bar.
There is no substance to the contention that the integrated bar makes one's right to practice law dependent on the caprice of his competitors, in that it clothes a committee of lawyers with power to discipline for unprofessional conduct. On the ballot used in the referendum one of the conditions was: "Supervision of the Bar's disciplinary action by direct review of the Supreme Court." We construe this to mean that the investigation and trial of a lawyer for unprofessional conduct must be a judicial proceeding in the manner provided by law or rule of this Court as defined in petition of the State Bar Association, 134 Fla. 851, 186 So. 280. So the effect of the referendum was to re-enact the law already in effect. The matter of prescribing courses of study and requirements *Page 908 
for admission to the bar is also vested in this Court by law. They meet the requirements of the American Bar Association and there is no suggestion here that they should be changed.
The states catalogued in this opinion as having adopted bar integration were not the first to experiment with it. The English bar was integrated early in its history and, as we understand, has never abandoned integration. A study of the objections voiced to integration convinces us that a great deal of misunderstanding has been generated about its objectives. The name given it was perhaps unfortunate. It was not readily assimilated. It doubtless precipitated some into an intellectual fog and one's natural impulse is to kick out of such a phenomenon rather than put out the cerebral energy necessary to dispel it.
It cannot be gainsaid that integragration will be what the bar and the court make of it. It was never designed to sacrifice the freedom and initiative of the bar, its boldness and courage in challenging the cause of the downtrodden nor its inherent independence in taking up battle for the minority. It is no more akin to unionism and the closed shop than it is to the Rotary Club or the Presbyterian Church. Nor was it intended as a means to aid groups and cliques in the exercise of arbitrary power or to enforce their will on others. In states where the integrated bar has been approved no such charges have been lodged against it. Its avowed opponents have invariably become its ardent supporters and the strength of its enlarged membership and budget have enabled it to undertake many projects for the improved standing and strength of the bar that it could not undertake with a minority membership. The objections raised here to the integrated bar become utterly groundless in the face of the fact that in every state where it has been adopted, whether by rule of court or act of the legislature, it was done subject to supervision by the courts. The work being accomplished by the integrated bar of California is perhaps the strongest practical refutation of such thesis.
Bar integration grew from a felt necessity for an organization that could speak for the profession in esse. It is not a compulsory union but a necessary one to secure the composite judgment of the bar on questions involving its duty to the profession and the public. It is hardly necessary to assert that the bar has a responsibility to the public that is unique and different in degree from that exacted of the members of other professions. This difference is symbolized in the requirement that every lawyer subscribe to an oath to support, protect and defend the constitution of the United States when he is admitted to practice. On the theory that he is such an important factor in the administration of justice this Court has held that a lawyer's responsibility to the public rises above his responsibility to his client. The very nature of our democratic process imposes on him the responsibility to uphold democratic concepts regardless of how they affect the case in hand.
There was a time when bar integration would not be supported as strongly as it can at the present. The reason for it now is not discipline for unethical conduct but to alert the bar to professional and public responsibility. We take no stock in the accusation that the bar is not worthy of public trust, we think by the square foot it contains as many members of unblemished character as any profession. At the same time we cannot shut our eyes to the fact that, like the institutions of our country, it is under attack and that we have a duty to meet the attack courageously. We think this duty devolves on the bar as a whole rather than on a minority organization of it. The assault on our institutions which the bar is expected to take the leading role in challenging also requires the impact of the full man power of the bar. We do not think bar integration would be worth the candle as a specific for unethical conduct, but as a means of giving the bar a new and an enlarged concept of its place in our social and economic pattern, it has amply proven its value.
Bar integration may impose curbs on professional freedom. Likewise, every other business must give place to restrictions that arise in the face of growing populations. While alone on his island Robinson Crusoe enjoyed a much greater *Page 909 
degree of freedom than he would enjoy if he lived in Tallahassee at the present, but no one in Tallahassee would exchange the degree of freedom he now has for that enjoyed by Crusoe. If Jacksonville should find itself in the throes of a yellow fever epidemic the State Board of Health would not hesitate to quarantine its citizenship and draft its full man power including doctors to put down the epidemic. Twice in the lives of many now living we have drafted the young manhood of the country to put down what was said to be an assault on democratic institutions. Growing populations and changing conditions necessarily give rise to social and economic complexes that require wisdom and discretion to cope with. The bar should be the first sector of the population to comprehend this and order its house to meet such emergencies.
We are conscious of the charge that the history of professional organizations since the "Guild" system of the middle ages has been one bent on enlarging the economy and selfish designs of its members. The answer to this charge is that if bar integration is to be nothing more than a spring board to leap for power and pay and perquisites, if it has no purpose other than to grab at the expense of others, it is unworthy the noble traditions of the profession. The bar increases in public esteem by the precepts it lives by, not by the money it makes. In fact, if money making is the lawyer's sole purpose, he worships a god that is too small. If he does not approach the law as an avenue to perform a fine public service, work hard, live by faith and die poor, he should turn to some other business for food and shelter and raiment. It is true that now and then one turns trader and finds the coveted pot of gold but not so if he sticks strictly to his profession. The very nature of the lawyer's business is that of trustee. If he makes a featherbed of that to sprawl on and pulls the cover over his head oblivious to the things taking place around him he invites merited criticism or disaster.
It follows that petitioners have made a case which warrants a rule of this Court in integrating the bar of Florida as prayed for in the petition. It provides the best means yet devised to enlist the full man power of the bar in the execution of its duty. It is also shown that in states where the integrated bar has been tried, it has revealed none of the abuses lodged against it, but on the other hand it has restored public confidence in the bar, enlarged professional consciousness, energized the bar's responsibility to the public, has improved the administration of justice and is the only means presented whereby every member of the bar can share in its public and professional responsibility. We do not believe it will relieve the bar of ethical anemics, crackpots and communists. Certainly this class should be screened out but the law school is the logical place to do it. Moral sensitiveness is a rebound from home discipline. A law to prohibit a man making a fool of himself would be as effective as one to improve his morals.
It is our view that integration would best serve the interest of the bar and the public, that the objections raised to it are not well grounded, so the petition to integrate is granted.
ADAMS, C.J., and CHAPMAN, THOMAS, SEBRING and HOBSON, JJ., concur.
BARNS, J., dissents.