ADKINS, Justice,
dissenting.
By a two-thirds increase in bar dues the receipts of the Florida Bar will rise from $5,065,000.00 to $6,178,100.00. The Bar is still a young organization, but the increase in dues and expenditures has caused the budget to assume a middle-age spread— that is, certain areas in the Florida Bar program are not in proper proportion to its size.
*1368 The majority of practicing lawyers never approved integration, only a majority of those participating. The court pointed this out in Petition of Florida State Bar Association, 40 So.2d 902 (Fla.1949) by saying:
“Of the 2,700 ballots mailed to the members of the bar, 1,631 were voted and returned. Of the returned ballots 1,131 voted in favor of integration and 500 voted against integration. The opponents of bar integration challenge the number 2,700 as being an accurate count of the practicing attorneys in the State but our investigation reveals no support for this challenge. We are of the view that the referendum was fairly conducted.”
The court then compared the proposed program with a similar one in California. In discussing the latter program, the court said:
“To support such a program the integrated bar of California has a membership of 15,000 and a budget of $250,000 per an-num which is of course out of the reach of the Florida Bar. It is detailed here for the purpose of giving the objectives of bar integration. Its end result is a stronger and better informed bar and it has so enlarged the confidence of the public in the integrated bar of California, that its aid is sought for recommendation to judicial appointments and it is called on frequently to sponsor movements for the common good. Whatever it fosters it has the advantage of being able to call to its aid one hundred per cent of its members.”
This two-thirds increase in bar dues is a major change in members’ obligations and essentially a judgment upon the proper role of the Florida Bar. Fifty dollars is a notable sum to add to the annual expenses of many attorneys. Despite some well-publicized, well-paid attorneys, many lawyers, such as those employed by the state, earn only a moderate salary. Fifty dollars is a major sum to them.
The Bar, by its own admission, needs a dues increase to revise disciplinary proceedings while maintaining its wide-flung activities in lobbying, CLE, large buildings, consumer information dissemination and other areas. Only because of the combined costs of the disciplinary proceeding changes and continuance of the other activities does the Bar need the fifty-dollar dues increase. By reducing spending in either area, with, of course, a concomitant reduction in activity, the Bar could subsist on the present dues or survive with a much less dramatic increase.
Discipline is the main justification for the Bar’s existence and its most sacred duty. Lawyers and courts, and through them the Bar, hold their unique position solely because they -have solemnly promised to regulate their own behavior in the public interest and police their own ranks more closely then even the most assiduous layman could or would. The Bar’s disciplinary and ethical role should never be abandoned.
But the Bar’s other more peripheral activities may well be abandoned, if they cannot be financed under a reasonable dues structure. Many activities such as the Bar’s lobbying and public information services clearly are far removed from disciplining and regulating attorneys. Perhaps some activities should not even be funded by dues mandated by this court. An attorney who feels that way can more easily and effectively express his opinion by voting against a dues increase as by writing dozens of letters to his representative on the Board of Governors. The decision to fund is as major a policy decision as any other. And this fundamental policy decision should be submitted to the vote of all the Bar’s members, not just those who attend one meeting.
The court is not pontificating on constitutional law nor laying down precedents to guide posterity. It is acting as an administrator. The court administers a powerful regulatory agency whose funding is required of all who wish to practice law in Florida. Like any administrator the court should be fair. It should do its best to achieve its goal while not unfairly restricting or burdening those regulated. I believe that a major financial and policy decision made by less than the entire Bar membership is fundamentally unfair.
*1369 A look at the restrictions placed by law and custom on all other American forms of self-governing communities convinces me that this court should exercise more restrictive supervision. The Legislature is restricted by Florida’s constitution. The right to amend the constitution is available to the people if their representative body steps too far out of line. The public has a right to be heard before any state agency can promulgate rules which affect them. Section 120.54, Florida Statutes (1977). Shareholders in corporations are guaranteed that at least a majority of them must agree with their directors before major decisions such as amending the Articles of Incorporation are made. Section 607.-181(l)(c), Florida Statutes (1977). Even fraternities or children’s informal neighborhood clubs usually have some sort of constitution and provide for group approval of dues increases and changes in the constitution.
Members of the Florida Bar do not have even these elemental democratic controls over their governors. In the absence of this court’s supervision, there is little restriction on precipitous actions by the Board of Governors. Unlike almost all other representative governing bodies the Bar is not restricted by the document creating it. Not one of this court’s grants' of power to the Bar prohibit it from any action. The Florida Constitution and the United States Constitution apply to the Bar. But even today courts hesitate to strictly apply constitutional standards to an integrated bar. Since the Bar is fettered only by this court, the court should be all the more certain that it reserves some power over fundamental decisions for the lawyers.
The right to vote at meetings during the Bar Convention also lacks substance. The Bar and the majority graciously allow attorneys to vote without charging a $55.00 poll tax. But impediments to voting in the meeting remain. An attorney must find the time to travel to the convention site, must make the trip, and must pay the not insignificant costs of the journey. The convention site this year is in Hollywood, a place very accessible, very delightful, but not very near to the attorneys in Pensacola.
An attorney should not have to go to such troubles and expenses to vote on a major issue. This court should establish some reasonable manner for the Bar membership as a whole to directly control the ultimate decision on a dues increase. Voting by mail as in the Board of Governor’s election would be best. Proxy voting at the very least should be allowed. Without these changes the Bar is not a democracy or a republic. It is a plutocracy which cannot be made to look after the best interest of its members or the general public.
Also, we should re-examine the necessity of out-of-state attorneys, judges and retired judges paying the same amount of dues as the local practicing attorney. Although we have determined that dues are not taxes (Petition of Florida Bar Assoc., supra,) they are in the same posture as special assessments, the amount of which should be determined by the benefits received. The practicing attorney is in the best position to make this judgment and should, by vote, be given an opportunity to express his views. Out of $5,000,000, this postage should be a minor item. In fact the ballot could be placed upon one of the myriad advertising folders which deluge the offices of attorneys.