# Margolis's Case.

*Attorneys-at-law—Disbarment—Disloyal conduct—Opposing conscription—Distributing matter barred from mails—Anarchism, etc. —Review—Appeal.*

1. The standard of personal and professional integrity which should be applied to attorneys at law, is not satisfied by such conduct as merely enables them to escape the penalties of the criminal law.

2. The appellate court will not reverse an order of the lower court disbarring an attorney, where it appears the right to take such action had been impartially considered and prudently exercised.

3. An attorney-at-law is properly disbarred where it appears that he encouraged others by his addresses to violate the laws of the land, and prepare and equip themselves to own the industries and mines of the state, and to use force, if necessary for such purpose; that he distributed printed matter barred from the mails; that he was an active member of the Anti-Conscription League, and distributed its literature urging men not to enlist, in violation of a federal statute; and that he acknowledged he was an anarchist, a Bolshevik, and a member of the Industrial Workers of the World, and of the Union of Russian Workers.

4. Such conduct, if indulged in by any one would tend to wrongdoing, but in the case of an attorney, whose duty it is to uphold the law and not encourage the breach thereof, it constitutes a positive

disregard of the official obligation which he solemnly entered into when he took his oath of office.

Argued January 4, 1921. Appeal, No. 6, Oct. T., 1921, by Jacob Margolis, from order of C. P. Allegheny Co., Jan. T., 1920, No. 2068, making absolute rule to disbar, in re Jacob Margolis. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Rule to show cause why respondent should not be stricken from the roll of attorneys. Before SHAFER, P. J., and FORD and SWEARINGEN, JJ.

The opinion of the Supreme Court states the facts.

The court made the rule absolute. Respondent appealed.

*Error assigned,* among others, was (5) order, quoting it.

*George C. Bradshaw,* with him *L. K. Porter* and *S. S. Robertson,* for appellant.—An attorney-at-law may not be disbarred where he is not accused of any misconduct in his office of attorney and not been indicted nor convicted of any crime: Dicken's Case, 67 Pa. 169; Steinman's Case, 95 Pa. 220; Austin's Case, 5 Rawle 191; Trumbore's Case, 2 Penny. 84; Com. v. Newton, 1 Grant 453.

An attorney-at-law may not be disbarred because of his political and religious beliefs, for the reason that he expresses these beliefs to others.

*John C. Bane,* with him *Arthur M. Scully,* for appellee.—The continuous, persistent and laborious efforts of Margolis to teach iniquitous doctrines to persons predisposed to lawlessness, point unerringly to the conclusion that his purpose therein was treasonable and his

object was the destruction of the existing government by force: U. S. v. Williams, 194 U. S. 279.

The status of attorneys, the nature and purposes of proceedings for disbarment, the character of the offenses which justify disbarment, and all material questions collateral thereto have been fully considered and determined by the courts: In re Davies, 93 Pa. 116; Smith's App., 179 Pa. 14; In re Gottesfeld, 245 Pa. 314; Serfass's Case, 116 Pa. 455; Ex parte Wall, 107 U. S. 265.

OPINION BY MR. JUSTICE SADLER, February 14, 1921:

The respondent, Jacob Margolis, was admitted to the Bar of Allegheny County in 1910, having first taken the oath required in such case by the Act of 1834. In 1919, a petition was presented asking that he be disbarred for reasons set forth, and a rule was granted to show cause why his name should not be stricken from the roll of attorneys. Due notice of the application was given; subsequently an answer was filed, and voluminous testimony taken. On September 15, 1920, the rule was made absolute, the court below finding that the respondent had violated "his duty as a lawyer, and the obligation of the oath which he took to support the Constitution of the United States, and of this Commonwealth"; from the order so made this appeal was taken.

Margolis admitted that he was an anarchist, a syndicalist and a communist; he declared himself to be a Bolshevik, a member of the Industrial Workers of the World, and of an anarchist organization known as the Union of Russian Workers. The court below considered the aims of the various groups with which he was associated, and determined that their views and purposes were in conflict with the principles of our government, and that those supporting such theories could not be said to support—which carries with it the obligation to maintain and defend—the Constitution and laws of the state and country.

While respondent answered the charges by admitting association with the organizations mentioned, insisting that he approved of the ultimate results desired to be reached by those so affiliated, he denied in any way counseling disobedience of laws or governmental orders, or that he advocated the use of violent methods to attain the ends sought; but this denial was not sustained by the weight of the evidence, as we shall show later.

With the beliefs and opinions of Mr. Margolis the courts have nothing to do, unless his expressions thereof were uttered under circumstances and in a manner calculated to lead others to violate and disregard existing laws. In answering a similar plea, of lack of wrongful purpose, where an anarchist, sought to be deported, insisted that his ideas were theoretical only, the Supreme Court of the United States said, in United States ex rel. Turner v. Williams, 194 U. S. 279, 294: "If the word 'anarchists' should be interpreted as including aliens whose anarchistic views are professed as those of political philosophers, innocent of evil intent, it would follow that Congress was of opinion that the tendency of the general exploitation of such views is so dangerous to the public weal that aliens who hold and advocate them would be undesirable additions to our population, whether permanently or temporarily, whether many or few, and, in the light of previous decisions, the act, even in this aspect, would not be unconstitutional, or as applicable to any alien who is opposed to all organized government. We are not to be understood as depreciating the vital importance of freedom of speech and of the press, or as suggesting limitations on the spirit of liberty, in itself unconquerable, but this case does not involve those considerations,......and as long as human governments endure they cannot be denied the power of self-preservation, as that question is presented here." "All persons owing allegiance to the government, or residing within its jurisdiction, owe to it obedience to the Constitution and laws, and aid and support against all who seek its

destruction.   When the citizen or resident refuses to render this obedience and support, when he aids, assists, countenances, or encourages those who are struggling to overthrow the government, he no longer has a just claim to the aid of the government to enforce his rights": Cohen v. Wright, 22 Cal. 293, 325.

The court below found that the respondent actively encouraged the various groups, with which he was associated, in carrying out their aims; but it is not necessary to rest the present decision on this ground.   We are not called upon to discuss the principles and purposes of the many organizations referred to, for the record before us shows that the respondent encouraged others, by his addresses, to violate the laws of the land; that he said he believed in no government; and expressed contempt for conventional, or statute, law, advising the people to "prepare and equip yourselves to own [the] industries and mines" of this State, and, as found by the court below, advocating the use of force, if necessary, to carry out these destructive theories.

Such conduct as here shown, if indulged in by any one, would tend to wrongdoing, but in the case of an attorney, whose duty it is to uphold the law, and not encourage a breach thereof (State ex rel. v. Graves, 73 Ore. 331), it constitutes a positive disregard of the official obligation which he solemnly entered into when he took his oath of office.   In Ex parte Wall, 107 U. S. 265, 274, the court, in approving an order of disbarment under similar, but more aggravated, circumstances, said, in part: "Of all classes and professions, the lawyer is most sacredly bound to uphold the laws.   He is their sworn servant; and for him, of all men in the world, to repudiate and override the laws, to trample them under foot, and to ignore the very bands of society, argues recreancy to his position and office, and sets a pernicious example to the insubordinate and dangerous elements of the body politic.   It manifests a want of fidelity to the system of

lawful government which he has sworn to uphold and preserve."

That the respondent failed in the obligations imposed by his oath is further evidenced clearly by two transactions which appear upon the record, and show plain defiance of established law. Margolis testified that, after the use of the mails had been denied to a magazine known as "Mother Earth," a fraud order having been issued, he received addressed copies of this officially forbidden publication, in bulk, and distributed them from his office. One thus actively assisting in the evasion of the orders of the government can hardly be said to be supporting it, as the appellant was in duty bound to do.

Again, the respondent was active in the organization and conduct of the Anti-Conscription League, having as its aim opposition to the Selective Service Act during the recent war. Until May 18, 1917, this may have been unobjectionable, but on that date the bill was passed, and became the law of the land. Thereafter postal cards were mailed, in which the legislation was denounced, and the addressees were asked to sign pledges not to obey the law. On one postal, mailed May 29th, the words used, in part, were: "Do not register. Do not enlist. Do not go to war." Margolis admitted his connection with the organization, but claimed that it went out of existence on the passage of the Conscription Act; yet the rooms of the league were later visited by the officers of the Department of Justice, and documents found, which were offered in evidence, showing this statement to be inaccurate. At the time of the entry of the police into the headquarters of the league, the respondent was present, and was arrested, with four or five others.

By the Act of Congress of 1918 (United States Statutes at Large, vol. 40, chap. 75, p. 553), it was made criminal to obstruct, or attempt to obstruct, the recruiting or enlistment service of the United States. If the respondent had been convicted of a violation of the statute, there can be no doubt of his forfeiture of his rights

as an attorney: In re Kerl, 188 Pac. 40; In re Hofstede, 31 Idaho 448. Though no prosecution be had, and though the actual attempt to obstruct could not be shown to have been made personally by the respondent, yet he was actively participating in the work, and encouraging the league in its efforts to nullify the law. "The standard of personal and professional integrity which should be applied to persons admitted to practice law in the courts is not satisfied by such conduct as merely enables them to escape the penalties of the criminal law": People v. Macauley, 230 Ill. 208. Efforts to interfere with the draft in time of war furnish sufficient proof of such a disregard for the laws of the land, which an attorney takes an oath to uphold, as to justify his disbarment; this has been said where assistance was given in securing improper exemptions (In re Wiltse (Wash.), 186 Pac. 848), and where a member of the legal advisory board made a charge for services in filling out questionnaires: In re Arctander (Wash.), 188 Pac. 380; In re O'Reilly, 176 N. Y. Supp. 781.

The record before us discloses not only an utter lack of respect for the duly enacted statutes of the land, but active encouragement of others to violate them, as well as breaches thereof by appellant himself; all of which warrants the action taken by the court below. As said in Davies' Case, 93 Pa. 116, 122: "Whenever [a court's] right to strike a member from its roll appears to be impartially considered, and prudently exercised, as here, we are not willing to reverse its conclusion."

Assignments two and four are not founded on proper exceptions, and cannot be considered; the others are overruled.

The decree is affirmed, the costs to be paid by appellant.