82 So.2d 657 (1955)
Leo SHEINER, Appellant,
v.
The STATE of Florida, Appellee.
Supreme Court of Florida. En Banc.
July 29, 1955.
Rehearing Denied October 3, 1955.
Louis M. Jepeway and Jack Kehoe, Miami, for appellant.
George A. Brautigam, State's Atty., Miami, Richard W. Ervin, Atty. Gen., and Ellis S. Rubin, Asst. Atty. Gen., for appellee.
Darrey A. Davis, Miami Beach, on behalf of the Florida Bar, Herbert R. O'Conor, Baltimore, Md., Chairman, Committee of American Bar Ass'n, Malcolm P. Sharp, President, Chicago, Ill., Jessica Davidson, Secretary, Osmond K. Fraenkel, New York City, and John M. Coe, Pensacola, for National Lawyers Guild, as amici curiae.
TERRELL, Justice.
This case had its origin in a suggestion seasonably filed in the Circuit Court of Dade County to which was appended a transcript of certain evidence taken by a Sub-Committee of the United States Senate at New Orleans, March 18, 1954. Appellant testified before this Committee but declined to answer questions relating to his alleged membership in the Communist Party and other subversive organizations. Based on this suggestion, the state attorney filed a motion to disbar appellant as authorized by F.S. Section 39.24 et seq., F.S.A., otherwise F.S. Section 454.24, F.S.A. The pertinent part of the motion to disbar is predicated on "(a) unprofessional acts which unfit him for association with the fair and honorable members of the profession, (b) deceit or misconduct in his office of attorney and (c) violating the code of ethics prescribed for members of the bar of the State of Florida," in that he is or has been a member of the Communist Party, that he refuses to answer questions regarding his membership in groups which advocate and teach the forcible overthrow of constitutional government *658 of the United States, basing his refusal to answer on the protection given him against self-incrimination by the First and Fifth Amendments to the Federal Constitution and Sections 12 and 13, Declaration of Rights, F.S.A., Constitution of Florida.
To the motion to disbar issue was tendered by a sworn answer and the cause came on for hearing before the court, who propounded two questions to appellant  Have you ever been a member of the Communist Party? Are you now a member of the Communist Party? Appellant declined to answer both questions, claiming protection from self-incrimination under provisions of State and Federal Constitutions. Other testimony was taken but it is not material to the issue presented. The order of disbarment was then entered from which this appeal was taken.
Historically, the privilege against self-incrimination was raised as early as the twelfth century but was limited to inquisitorial proceedings of the Star Chamber and the High Commission of England. It was granted as a protection against religious dissent or other mental convictions, including religious or political heresy. In the colonies the privilege had to do with political inquisitions by prerogative courts. It may, therefore, be reasonably inferred that the inclusion of the privilege against self-incrimination in the fundamental law was to halt unwarranted inquisitions, particularly in cases where political or religious believers were involved. Noonan, "Inferences from the Invocation of the Privilege against Self-Incrimination," 41 Va.Law Rev. 311, 315 (1955). A pertinent reason for the privilege now is that one charged with crime should not be required to furnish the state means to convict him. See State ex rel. Feldman v. Kelly, Fla. 1954, 76 So.2d 798.
Time and circumstances have wrought many exceptions to the rule. In Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819, the court held that the privilege against self-incrimination relates solely to testimony which might lead to defendant's prosecution for crime. It can not be invoked to protect one from removal from office under an act that forbids political activity. Pfitzinger v. U.S. Civil Service Commission, D.C.N.J. 1951, 96 F. Supp. 1. The "setting" of the question has much to do with determining the danger of self-incrimination. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. The discharge of teachers for refusing to testify as to communist activities has been upheld on the ground that they were unfit to teach. Daniman v. Board of Education of City of New York, 306 N.Y. 532, 119 N.E.2d 373; Faxon v. School Committee of Boston, 1954, 331 Mass. 771, 120 N.E.2d 772; Board of Education of City of Los Angeles v. Wilkinson, 125 Cal. App.2d 100, 270 P.2d 82. The courts have sanctioned the dismissal of police officers for exercising the constitutional privilege of refusing to testify before a grand jury investigating crime. Christal v. Police Commission of City and County of San Francisco, 33 Cal. App.2d 564, 92 P.2d 416; see also Drury v. Hurley, 339 Ill. App. 33, 88 N.E.2d 728; Scholl v. Bell, 125 Ky. 750, 795-797, 102 S.W. 248; Canteline v. McClellan, 282 N.Y. 166, 25 N.E.2d 972.
These cases proceed on the theory that whereas the officers have a constitutional right to refuse to answer under the circumstances they have no constitutional right to remain police officers in the face of clear violation of the duty imposed upon them to prevent and expose crime and to disclose all information known to them which may lead to the lawbreakers' apprehension and punishment. The Supreme Court of California invoked a similar rule against one applying for admission to the bar. Minutes of Supreme Court of California, 43 A.C. No. 17, page 2. Our attention is also called to an advisory opinion of the Supreme Judicial Court of Massachusetts, Opinion of the Justices, 126 N.E.2d 100, addressed to the House of Representatives, dated April 13, 1955, holding that a proposed act of that state providing for the discharge of certain teachers in any public or private university, college or school who refuse to answer questions relative to their membership in the Communist Party would *659 be unconstitutional. Legions of cases hold that one can not be required to testify to that which may lead to his prosecution for crime. The point with which we are concerned here is whether or not immunity against self-incrimination is available to a member of the bar in a proceeding brought to disbar him. In other words, does it warrant him in refusing to answer questions relating to his membership in the Communist Party or other subversive organizations. Must the rules governing due process be accorded him in proving subversive charges against an attorney?
Refusal to answer the two questions propounded to appellant account of the protection against self-incrimination guaranteed by the State and Federal Constitutions, in addition to evidence taken before the Congressional Committee at New Orleans with reference to his activities in connection with the Communist Party and kindred subversive organizations, was the sole basis for the order of disbarment. The trial court proceeded on the theory that the practice of law is not a right but a privilege, that the state may grant or withhold it, or may withdraw it when the holder violates the trust imposed in him and being so, the right of protection against self-incrimination was not available to him.
The order of disbarment was supported by the following cases: Martin v. Law Society of British Columbia, 3 Dominion Law Reports 173; Cohen v. Wright, 22 Cal. 293; In re Margolis, 269 Pa. 206, 112 A. 478, 12 A.L.R. 1186; In re Smith, 133 Wash. 145, 233 P. 288, 43 A.L.R. 102; In re Taylor, 309 Ky. 388, 217 S.W.2d 954; In re Keenan, 310 Mass. 166, 37 N.E.2d 516, 137 A.L.R. 766; Lambdin v. State, 150 Fla. 814, 9 So.2d 192, and Welanko's Case, 99 N.H. 413, 112 A.2d 50. From the cases above and others, it is contended that there is an important distinction between one's status as an individual and his status as an attorney, that bar membership is a privilege, that it is not a right and that it is controlled by the courts unless regulated by the State or Federal Constitution. As to some of those who were called and refused to testify in said cases, the inference of guilt was indulged. The trial court followed that rule in this case for which we think he was in error.
The court was also of the view that when appellant was confronted with the charges against him, he should have explained fully his connection with the Communist Party and other subversive fronts, if any he had, instead of taking refuge in the Fifth Amendment. The following cases support this view: In re Wellcome, 23 Mont. 450, 59 P. 445; Fish v. State Bar of California, 214 Cal. 215, 222, 4 P.2d 937; In re Fenn, 235 Mo. App. 24, 128 S.W.2d 657; In re Anastaplo, 3 Ill.2d 471, 121 N.E.2d 826. These cases have been examined and the factual background is different from that in the case at bar. The charges were clearly proven as to some of them; as to others they were admitted or not controverted, or there was no showing why the order made was improper.
In this case the Circuit Court held in effect that as an individual appellant may seek shelter under the Fifth Amendment, but if he does and refuses to answer whether or not he is now or has ever been a member of the Communist Party, or other subversive organizations, the privilege to practice law may be withdrawn from him and his name stricken from the roll of attorneys. The Code of Ethics, 145 Fla. 763, 31 F.S.A. 420, Section 1, Oath of Admission; Petition of Florida State Bar Ass'n, 134 Fla. 851, 186 So. 280; Petition of Florida State Bar Ass'n, Fla. 1949, 40 So.2d 902; Lambdin v. State, supra, and Joopanenko v. Gavagan, Fla. 1953, 67 So.2d 434, are relied on to support this holding.
We agree that no lawyer trained and educated in the democratic tradition can become a member of the Communist Party or other subversive organization without forfeiting his privilege to practice law. To subscribe to the oath required for admission to the bar and then affiliate with an organization whose avowed purpose is to overthrow all free governments by force is so inconsistent that the two philosophies can not exist under the same skin. The Communist Decalogue among other pronouncements *660 contains the following: "Remember that if thou be not a devoted atheist, thou canst not be a faithful Communist or even a firm Soviet citizen in whom our state can rely. Atheism and Communism are of one bond and these ideals are the foundation of Soviet power." It would be as consistent for one schooled under a credo of atheism and the destruction of free government by force to contend that he is qualified to be an American lawyer by constitutional standards as it would be for him to contend that he is qualified to be a deacon in the Baptist Church or a steward in the Methodist Church. Indeed the metaphor might be extended to an allegory.
Appellant's answer to the motion to disbar disavowed any present connection with the Communist Party or its affiliates, or that he "ever committed any act of any kind that would be subversive or treasonable or in any way did I do anything that any member of this United States couldn't be proud of." Other portions of the answer were denied unequivocally, while as to others, strict proof was required. True, the answer was ambiguous in some aspects, as was the motion to disbar, but it was submitted under oath and made an issue on which evidence should have been taken. Appellant moved for summary judgment which was denied and the judgment of disbarment from which the appeal was taken was entered without direct proof or explanation of the issues made.
If any court can hold that appellant's refusal to answer the query, whether he is now or was ever a member of the Communist Party, supported by nothing more than the evidence taken by the Congressional Committee at New Orleans March 18, 1954, and inferences therefrom, is sufficient to disbar him, then one's privilege to practice law may be made to depend on a very tenuous thread. It is true that copy of the evidence before the Congressional Committee was attached to the suggestion to disbar, but it was not filed in evidence. Appellant testified before this Committee but invoked the protection of the Fifth Amendment. As to that part of the evidence elicited from the witness Crouch, he was denied the right of confrontation and cross-examination. He was also brought before the grand jury where he invoked protection of the Fifth Amendment. Under fair trial procedure, this evidence was incompetent and should not have been introduced. Standing alone, the evidence before the Congressional Committee may be said to point to communist activities on the part of appellant prior to 1947, but subsequent to that time it shows nothing to support the charges against him.
In Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, decided June 4, 1951, the scope of the Smith Act was defined and the "clear and present danger rule" was first applied to communist party activities. See also Chapter 20216, General Acts of 1941, and Chapter 28221, General Acts of 1953, making membership in subversive organizations a felony in Florida. Chapter 20216 carried punishment for other subversive offenses committed prior to this time, but they are not pertinent to this cause. The Federal Act, Smith Act, 18 U.S.C.A. § 2385, carried penalties for those convicted of knowingly or willfully advocating the overthrow of the United States government or that of any state. Account of the "`link in the chain'" of evidence discussed in the cases cited in State ex rel. Feldman v. Kelly, supra [76 So.2d 802], appellant may have been within his right as an individual to invoke the protection of the Fifth Amendment. In this holding we do not overlook the contention of the state that there is a distinction between the right of the individual and the right of the lawyer as such to invoke protection of the Fifth Amendment; that while he may invoke such protection as an individual if he does so as a lawyer he forfeits the privilege to practice law. We know of no warrant for any such distinction and can not see that it has any place in this case.
The real controversy here is whether or not due process was accorded appellant in taking from him the privilege to practice law. Did the state prove the charge against appellant by conclusive evidence? The case is infinitely more than a security *661 risk such as was involved in Peters v. Hobby, 349 U.S. 331, 75 S.Ct. 790. To deprive one of the privilege to practice law should never be done by "faceless informers," such as was involved in the Peters case where only an employment was involved. Depriving one of the right to practice law is the superlative stain that may be stamped on his character and when a square issue on that point is made by the pleadings, the state should come forward with proof adequate to support the charge. Some of the court (not a majority) held in the Peters case that confrontation and cross-examination under oath are essential to due process. While a proceeding to disbar an attorney is generally considered disciplinary rather than criminal, the seriousness of it does not remove the right of the accused to due process. See also Matters of Murchison, 349 U.S. 133, 75 S.Ct. 623, where the essentials of due process are stressed.
The last cited case and the Peters case are pertinent here for the emphasis they place on confrontation, cross-examination and fair trial as ingredients of due process. Confrontation and cross-examination under oath are essential to due process because it is the means recognized by which we test the probity of the evidence and eliminate that which is trumped up or of doubtful veracity. The "faceless informer" theory of proof should never be substituted for confrontation and cross-examination in a trial where the end result is to deprive the accused of one of his most precious assets  the privilege to practice law.
There is another important factor that enters into the determination of this case. It is shown that appellant had been admitted to the bar of the State of New York, the bar of the District of Columbia and the bar of the State of Florida; that no charge of unprofessional conduct had ever been lodged against him, that he had a good professional reputation and that the practice of law is the only means at his command to support himself and family. This recitation does nothing more than emphasize the right to fair trial under traditional rules of procedure. That has been the procedure followed under all other disbarment proceedings. I do not think the state can abandon proof of charges against an attorney for unprofessional conduct and disbar him on grounds that he challenges and that are not proven. It will be noted that some of the charges against appellant were at the time this nation was making obeisance to the Soviet Union because we thought we needed their manpower to conclude World War II. Some of the so-called "high ups" were proclaiming loudly the virtues of Uncle Joe. Under such pressure, pragmatic European statesmen extracted many concessions from us and many citizens, from waterboy for the order of "hack politicians" to the high cockalorum of the "eggheads," are alleged to have been caught in the communist net or to have espoused some aspect of the communist cause. While this does not excuse appellant from the charge against him, it does make it plain that he should have had a trial and a chance to refute or explain the serious charge lodged against him. He had a right to take refuge under the Fifth Amendment if his answer would tend to incriminate him, but he should have been candid with the court.
In Association of Bar of City of New York v. Sacher, 2 Cir., 1953, 206 F.2d 358, 360, the court held that "the purpose of striking an attorney from the rolls of a court is not to punish him but to protect the court itself and relieve the public of a member of the legal profession, who is unfit to serve as such." In extreme cases it was said to be essential in order to maintain the respect due the court by insuring that attorneys, who are "`officers of the court,'" are of good professional character. See also 347 U.S. 388, 74 S.Ct. 569, 98 L.Ed. 790, where this case was reversed but not for the reasons pertinent to the case at bar. The philosophy of this case is enlarged on in the case of In re Rouss, 221 N.Y. 81, 116 N.E. 782. It is an interesting case on other phases of the matter of disbarment.
In Matter of Ellis, 282 N.Y. 435, 26 N.E.2d 967, the status of lawyers resorting to protection of the Fifth Amendment is discussed *662 and the conclusion reached that generally it provides no basis for discipline. Inferences that may be drawn from taking advantage of the Fifth Amendment and the effect of withdrawing the privilege by the legislature is also discussed in In re Rouss, supra, but these questions are not explored here because the legislature has not seen fit to withdraw the privilege except as to certain criminal offenses, not pertinent here where the main point is due process. See also In re Grae, 282 N.Y. 428, 26 N.E.2d 963, 127 A.L.R. 1276, where another important aspect of a lawyer's immunity is treated. Also Florida State Board of Architecture v. Seymour, Fla. 1952, 62 So.2d 1.
No lawyer in this country is warranted in affiliating with a communistic activity of any character. He can not do so without being personal to a conspiracy to destroy the government that guarantees him life, liberty and the pursuit of happiness. He can not do it without renouncing his oath to protect liberty and administer justice without fear or favor. In fine, by the terms and preamble of the Smith Act and the Florida Act condemning subversive activities, he can not do so without being guilty of a species of treason. Section 23, Declaration of Rights, Florida Constitution and Section 3, Article III, Federal Constitution, define treason in substantially the same terms. It "consist only in levying war against it [state or United States], adhering to its enemies, or giving them aid and comfort." How can a lawyer affiliate with a conspiracy to destroy the government of the United States, in fact all free governments, without "adhering to its enemies [conspirators], or giving them aid and comfort"? The answer is self-evident.
By training the lawyer is better qualified than the layman to avoid the communist net. If his preparation for the bar did not plant in him an allergy for subversive leanings, it fell far short of the mark. If he unwittingly gets sucked into a subversive organization and refuses to testify as to his connection with it for reason of self-incrimination, his claim should be respected if it is properly grounded. Invoking the Fifth Amendment may or may not imply good character; neither does it prove guilt. Some of the commentators say that it may imply subversive associations. Others say that the one charged may let the matter stand open until the state brings him to book, but as a matter of record those who have made a clean breast of their communist activities as soon as or before they are charged have fared best at the trial. If he shows penance, that he was duped or misled and in all other respects has a professional character above reproach under the rule announced in State ex rel. Florida Bar v. Murrell, Fla. 1954, 74 So.2d 221, he should not be disbarred. This is true because disbarment is an extreme remedy and should be exercised only as a last resort. No lawyer who has so forgotten his oath and pledge of allegiance as to become involved in subversive activities and who perseveres in them would make a dependable officer or one to be trusted with the multitude of official and trust obligations that may be placed in his hands.
After all is said, we are driven to the conclusion that appellant was not accorded due process, in that there is no evidence connecting him with communistic activities except the Congressional Committee report and inferences that may be drawn from it having to do with activities that took place seven years before this proceeding was brought and the fact that he invoked the protection of the Fifth Amendment. Before the Congressional Committee appellant was denied the right of confrontation and cross-examination. Doubts as to criminality of mere membership in the Communist Party under the Smith Act were not removed until Dennis v. United States, supra, decided June 4, 1951. It may be that after this decision we did not need Chapter 28221, General Acts of 1953, making membership in the Communist Party a felony in Florida. In re Holland, 377 Ill. 346, 36 N.E.2d 543. His position is not in the class with that of the teacher, the police officer, the security risk or others in public employment. *663 His office of attorney clothes him with a trusteeship that involves an obligation to the state transcending that to his client. See cases cited in fourth paragraph of opinion. It can not be abrogated by refinement. There may be circumstances under which claiming the privilege against self-incrimination would be cause for discipline or even disbarment, but they should be demonstrated by adequate proof. To do less would amount to the application of totalitarian methods to the enforcement of democratic precepts. It would deny one due process.
The judgment appealed from is accordingly reversed and remanded with directions to proceed to proof of the issues as directed in this opinion.
Reversed and remanded.
DREW, C.J., and SEBRING, J., concur.
FLOYD, Associate Justice, concurs specially in the opinion and judgment of TERRELL, J.,
JONES, Associate Justice, dissents.
HOBSON and THORNAL, JJ., not participating.
FLOYD, Associate Justice (concurring specially).
I concur in the opinion and judgment reached by Mr. Justice TERRELL for the following reasons:
This case comes here in the form of an appeal from an order entered by the Court below disbarring appellant from the practice of law in the Courts of Florida. Several questions are posed by counsel for appellant and the State in exhaustive briefs filed, but, in the main, the primary question seems to me to be whether the "due process and self-incrimination" clauses of the Florida and Federal Constitutions have been violated by the disbarment order, or, more specifically, whether the State had satisfied its burden of establishing "by a preponderance of the evidence" the allegations contained in its motion to disbar appellant, pursuant to Chapter 39.24 et seq., Florida Statutes, F.S.A. (same as Chapter 454.24 et seq., Florida Statutes, F.S.A.), before the disbarment order was entered.
Sheiner had been a member of the Bar of Florida since 1946, and had previously been admitted to practice in New York and the District of Columbia. A "Suggestion of Amicus Curiae" was filed before the Circuit Judge by an attorney. This "suggestion" contained a transcript of proceedings before a United States Senate Sub-Committee held at New Orleans, Louisiana, March 18, 1954, at which appellant appeared and testified under oath, and an examination of the transcript reveals that appellant declined to answer certain questions, invoking constitutional grounds, including the Fifth Amendment. These questions related to past membership in the Communist Party, and certain other organizations, one of which was the National Lawyers' Guild (membership in which appellant admitted).
The learned Circuit Judge, based on the foregoing, ordered the State Attorney to file a Motion to Disbar appellant. In response to this order, the Motion was filed, alleging appellant "is and/or has been a member of an organization and/or organizations, group or groups of persons who advocate and teach the forceful overthrow of the constitutional form of government of the United States of America, in that he is and/or has been a member of one or more of the following organizations, to-wit: * * * The Communist Party of the United States."
The Motion to Disbar went further than the "Suggestion" in that it alleged that in addition to refusing to answer certain questions before the Senate Sub-Committee, he also refused to answer certain questions before the Grand Jury of Dade County at a previous inquiry, and several other grounds, none of which latter grounds are important to this opinion, except that, by such refusal to answer, appellant was guilty of unprofessional acts which unfit him for *664 association with the fair and honorable members of the profession.
After his demurrer was overruled, appellant filed a sworn answer to the allegations, and the cause came on for final hearing before the Court. Appellant was the first witness called by the State. The Court asked appellant two questions:
"Have you ever been a member of the Communist Party?"
"Are you now a member of the Communist Party?"
Appellant refused to answer these questions on previously stated grounds, whereupon the Circuit Judge announced orally that a judgment of disbarment would be entered, which judgment was later reduced to writing, and from which this appeal is taken.
The record reflects that several witnesses were called by the State. They were sworn and told to wait until called to testify. It must be assumed that these witnesses were called for the purpose of supporting the allegations contained in the State's Motion to Disbar.
Only one of these witnesses testified, however. His testimony was taken during an interruption of appellant's examination, by agreement of counsel, for convenience of the witness. The witness' testimony was not of particular import, however, and was not assigned as a reason for subsequent disbarment. After he testified, appellant was again called, and his examination was resumed.
Counsel for the State and Amicus Curiae, American Bar Association, concede, yea urge, that the right of a citizen to invoke the constitutional guaranties against self-incrimination must be protected and preserved. They distinguish, however, the right of the individual from the right of an individual who is a lawyer when the assertion of that right is inconsistent with his status as an attorney. Appellee contends that a lawyer is clothed with both a right (as an individual) and a privilege (as a lawyer); that the assertion of the right may forfeit the privilege; and that, having asserted the right, the individual walks from the proceeding stripped of no right, nor convicted of a crime. But he must be made to relinquish his privilege to practice law.
I cannot agree with the contention that would relegate members of the Bar to the status of "secondary citizens" under the Constitutions of Florida and the United States. Whatever rights lawyers enjoy as individuals under these two documents, they must also enjoy as attorneys. Otherwise, it follows that "it is a wrong to assert a right." If lawyers are held disqualified to exercise the rights of individuals against self-incrimination under the Fifth Amendment of the Federal Constitution and Article 12 of the Declaration of Rights under the Constitution of Florida, what other constitutional guaranty will be next to be eliminated as it applies to lawyers? It would be just as consistent to say that the sheriff may demand entrance to the home of a lawyer without a warrant, because the sheriff believes that contraband material may be hidden therein. The lawyer may ask: "Where is your search warrant?" And the Sheriff reply: "Ordinarily I would need a warrant to search your house, but since you are a lawyer the constitutional prohibition against illegal searches and seizures does not apply to you as it does to other individuals, and I, therefore, have the privilege of making the entry and search without warrant." In re Holland, 377 Ill. 346, 36 N.E.2d 543; In re Grae, 282 N.Y. 428, 26 N.E.2d 963, 127 A.L.R. 1276.
Appellee contends, among other things, that the proceedings are not criminal in nature, and involve no penalty, punishment or forfeiture in the ordinarily accepted use of these terms. To support this view, In re Rouss, 221 N.Y. 81, 116 N.E. 782, is relied upon. This contention cannot be reconciled with the opinion and holding of this Court in Florida State Board of Architecture v. Seymour, Fla., 62 So.2d 1, at page 3, where the Court said, supra:

*665 "To support its contention appellant places great stress on In re Rouss * * *. It is true that in this case the Court of Appeals of New York held that a proceeding for disbarment was not a prosecution, penalty or forfeiture within the terms of the New York immunity statute. The court below (Florida court) refused to apply this interpretation to the present proceeding and we think the decision cited amply supports this view. * * *
"It is accordingly our view that a proceeding to revoke appellee's certificate as an architect amounts to a prosecution to effect a penalty or forfeiture as contemplated by Section 932.29, Florida Statutes 1941, F.S.A. The revocation of his certificate could be nothing short of a penalty or forfeiture, against all of which appellee is immunized by the statute." (Parentheses supplied.)
Appellee further relies upon Martin v. Law Society of British Columbia, 3 Dominion Law Reports, 173; Cohen v. Wright, 22 Cal. 293; In re Margolis, 269 Pa. 206, 112 A. 478; In re Smith, 133 Wash. 145, 233 P. 288, 43 A.L.R. 102; In re Taylor, 309 Ky. 388, 217 S.W.2d 954; In re Keenan, 310 Mass. 166, 37 N.E.2d 516, 137 A.L.R. 766, and Lambdin v. State, 150 Fla. 814, 9 So.2d 192, as well as In re Wellcome, 23 Mont. 450, 59 P. 445; Fish v. State Bar of California, 214 Cal. 215, 222, 4 P.2d 937; In re Fenn, 235 Mo. App. 24, 128 S.W.2d 657 and In re Anastaplo, 3 Ill.2d 471, 121 N.E.2d 826, to support the order of disbarment. An examination of these cases reveals a basic procedural, as well as factual, difference in each of the cases from the case at bar. In In re Wellcome, supra, there was voluminous direct testimony of witnesses directly relating to participation in bribery with the attorney involved. In Fish v. State Bar of California, supra, there was concrete evidence of illegal and unethical solicitation of clients by the attorney, or his agent, with his knowledge, and this evidence was undisputed. In In re Fenn, supra, there was voluminous evidence before the Special Examiner appointed to hear the charges, which evidence was abundantly corroborated by other creditable evidence regarding "runners" for the lawyer involved. In In re Smith, supra, the defendant openly advocated violence to bring about an industrial revolution through the organization known as Industrial Workers of the World. In In re Taylor, supra, the attorney fraudulently obtained admission in one State after having been disbarred in another. An authenticated copy of the Order of Disbarment was admitted in evidence, and the attorney failed to refute it. He contented himself with a collateral attack upon its validity. In Lambdin v. State, supra, the record reflects abundant evidence of unethical practices. In In re Margolis, supra, the lawyer admitted he was an anarchist, a syndicalist and a communist. He also declared himself to be a Bolshevik, a member of the I.W.W. and of an anarchistic organization known as the Union of Russian Workers. He denied in any way counselling disobedience of laws or government orders "* * * but this denial was not sustained by the weight of the evidence * * *.". 112 A. at page 479 of Opinion. Voluminous testimony was taken showing, among other things, his arrest for violation of the Draft Act. In In re Keenan, supra, there was involved a jurisdictional question only.
In Martin v. Law Society of British Columbia, 1950 Dominion Law Reports, Vol. 3, page 195, the appellant was an admitted communist, having told the Benchers that he had been a Marxist communist for some time. The Benchers came to the conclusion that the Marxist philosophy of law and government, in its essence, is so inimical in theory and practice to the Dominion's constitutional system and free society, that a person professing it is eo ipso not a fit and proper person to practice law in the Province, and hence cannot be of "good repute" within the meaning of the Legal Professions Act.
It may be that the appellant has been, and is, engaged in the most insidious conspiracy capable of a citizen of the United *666 States, much less one who professes to stand as an honorable member of the Bar.
It may be that Sheiner was "duped" by the utopian assurances of the socialist visionary misguided by the coldly treacherous communist revolutionary, only later to awaken to the reality that he was being "used".
It may be that this lawyer has never been a member of the Party espousing the overthrow of our constitutional and Republican form of government by force and violence. But one thing is certain. From aught that appears from the record as it stands in this cause on appeal, the Appellant cannot be said to be properly placed in any of the foregoing categories, measured by the yardstick of due process. The failure or refusal of the appellant to answer questions propounded by the learned Circuit Judge below does not, in and of itself, satisfy the "preponderance of evidence" burden placed upon the State by the express terms of the disbarment statute. Nor does this refusal cause the burden to shift to the appellant, at this point in the proceeding, thus requiring him to prove his own innocence.
It has come to be universally accepted in the Western Nations that it is dangerous to our way of life to allow a known communist or communist sympathizer to remain in a position of trust or influence. Martin v. Law Society of British Columbia, supra  pp. 178-179. It is recognized that we are engaged in a bitter struggle involving ideologies with those who espouse communist doctrines and that this struggle may erupt at any moment into an armed clash involving our own soil.
Democracy, however, must be sold on its own merits, not on the demerits of communism. We will convict in the American way, that is, charge, try, prove and convict  on the basis of the time honored tradition of democratic precepts. Any deviation from these principles makes for but better fodder for the master propagandists of tyranny, and we would unwittingly be playing into their hands.
In the case at bar, the issues have been drawn. The State has charged or alleged certain conduct of appellant to be inimical to the best interests of the profession and his country. Witnesses are apparently available to sustain these allegations. If not, investigative weapons are certainly available to the State Attorney by which a "case" may be made. The United States Government has successfully convicted members of the top echelons of the Communist Party without resorting to force and without the aid of having them testify against themselves. Communist dominated countries can find little solace in the manner and method of these convictions. If the appellant has manifested a want of fidelity to the system of lawful government which he has sworn to uphold and preserve, let it be shown by a "preponderance of the evidence" in what has come to be known, not only as the American way, but also which is required by the Statute  Chapter 39.26, Florida Statutes, F.S.A.
I would therefore reverse and remand this cause with directions to proceed to proof of the allegations as contained in the Motion to Disbar.
DREW, C.J., and TERRELL and SEBRING, JJ., concur.
EDWIN L. JONES, Associate Justice (dissenting).
Appellant, Leo Sheiner, appears before this Court seeking reversal of an order of the Circuit Court, Dade County, disbarring him as an attorney at law in the State of Florida, and consequent denial of all the privileges and rights previously granted him by the state under his status as an attorney.
This cause had its inception upon the filing of a suggestion of Amicus Curiae by an Assistant Attorney General of the State of Florida. To this suggestion was attached a copy of appellant's testimony given before a United States Senate Subcommittee in a hearing on March 18, 1954, in New Orleans, Louisiana. The transcript of this testimony *667 was not filed in evidence, however he admitted having attended said hearing and testifying as alleged.
On April 7, 1954, the Circuit Judge made an order directing the State Attorney to proceed according to the provisions of F.S. Section 39.24, F.S.A., and file a motion for the disbarment of the appellant, Mr. Sheiner. The suggestion of the Assistant Attorney General was made a part of this order but the testimony taken in New Orleans was not.
On April 12, 1954, the State Attorney filed a motion for the disbarment of Mr. Sheiner upon the grounds, among others, as follows:
"5. * * * (a) unprofessional acts which unfit him for association with the fair and honorable members of the profession, and (b) of deceit or misconduct in his office of attorney, and (c) violating the Code of Ethics prescribed for members of the Bar of the State of Florida, for one or more of the following reasons, to-wit:
"(A) That the said Leo Sheiner is and/or has been a member. * * *
"The Communist Party of the United States.
"(B) That the said Leo Sheiner, on or about the 26th day of January, A.D. 1954, having been duly summoned to appear before the Dade County Grand Jury, and being sworn on his oath failed and refused to answer questions before said Grand Jury, regarding his membership in or having belonged to certain organization and/or organizations, group or groups of persons who advocate and teach the forcible overthrow of the constitutional form of government of the United States of America, and based his refusals to testify upon the provisions of the First and Fifth Amendments of the constitution of the United States of America, and sections 12 and 13 of the Declaration of Rights of the constitution of the State of Florida.
"6. That the said Leo Sheiner on March 18, A.D., 1954, was duly subpoenaed to appear in New Orleans, Louisiana, at a hearing conducted by the United States Senate to investigate the administration of the internal security and other internal security laws, by the Committee on the Judiciary of the United States Senate, and having been duly sworn on his oath to tell the truth, the whole truth and nothing but the truth, refused to answer certain questions propounded to him by said sub-committee relative to the inquiry then being conducted. * * *
"7. That at the hearing of said sub-committee on March 18, A.D. 1954, the said Leo Sheiner was personally affronted by his accuser, one Paul Crouch and charged, among other things, with having been a member of the Communist Party and the head of the Southern Conference for Human Welfare at Miami, Florida, that being required by the sub-committee to admit or deny the charges made by the said Paul Crouch, the said Leo Sheiner refused to admit or deny said accusations or statement to be true or false and invoked the provisions of the fifth amendment of the constitution of the United States of America as grounds for his refusal to admit or deny said accusations,
* * * * * *
"* * * and the said Leo Sheiner, having refused to answer the accusations while under oath for the reason that said answers might tend to incriminate him, that said public statement of aforesaid is and constitutes deceit or misconduct in his office of attorney.
"11. That the said Leo Sheiner, in invoking the first, fourth, fifth, sixth, eighth, ninth and tenth amendments to the constitution of the United States of America, or any of them, knew or should have known that as such an attorney, under his oath of office, was guilty of unprofessional acts which unfit him for association with the fair *668 and honorable members of the profession." (Emphasis added.)
On May 3, 1954, the appellant filed a demurrer to the motion to disbar which was overruled on August 2, 1954, and thereupon he was ordered to file his answer and pursuant thereto, he filed an answer on August 6, 1954. On August 27th, Mr. Sheiner filed his motion for summary judgment which was denied.
The case came on for hearing before the Circuit Judge on September 3, 1954, and over the objection of the appellant he was called as a first witness. Appellant insists that the Court committed reversible error by calling him as the first witness in the trial. Such procedure is fully authorized by Rule 1.37 of the 1954 Rules of Civil Procedure which provides that a party may call an adverse party and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party. There is no merit in this assignment of error.
At the beginning of the examination of the appellant, the Circuit Judge denied the motion of the State Attorney to order the appellant to testify as to whether or not he had been a member of the Communist Party, and in so doing stated:
"It does not mean, however, that I hold that a member of the Bar whose loyalty is justifiably under suspicion may invoke his Constitutional right, which is conceded, and yet retain his membership in a legal profession."
Thereafter the appellant was asked by the Court the two questions: (1) "Have you ever been a member of the Communist Party?" and (2) "Are you now a member of the Communist Party?" The appellant refused to answer these questions stating: "If it please the Court, I must respectfully refuse and decline to answer the question upon all of the grounds that I have previously stated, sir." The previously stated grounds in the witness' own words were:
"Therefore I must respectfully, and with the respect of this Court, refuse to answer that question, on the ground that I fear I may be subject to prosecution, or prosecuted criminally, both under State and Federal law, and I therefore wish to avail myself of the privilege against self incrimination rendered to me by Article 12 of the Declaration of Rights of the Florida Constitution, and the Fifth Amendment to the United States Constitution, and also because of any of the rights and privileges given to me under Article 13 of the Declaration of Rights of the Florida Constitution, and the First Amendment of the United States Constitution."
As the witness' testimony in New Orleans was not filed in evidence only those parts referred to by him in his testimony in this case need be discussed in this opinion. There were various assignments of error but it appears from the briefs and from oral argument at the Bar of the Court that all parties agreed the dominating question is: Was the appellant's refusal to answer the questions of whether or not he was or ever had been a member of the Communist Party sufficient to disbar him in this particular proceeding?
The appellant admitted in his answer that at the time he was admitted as a member of the Bar of the State of Florida there was in full force and effect a Code of Ethics adopted by the Supreme Court of the State on January 27, 1941, and which became effective April 1, 1941; that by said admission to the Bar of the State of Florida, the appellant became subject to the rules and principles governing the conduct of members of the Bar of this State as promulgated in said Code. The Code of Ethics referred to may be found in 145 Fla. 763 et seq., and in Volume 31 F.S.A. 405 (See Rule B, Section (1), page 420  Oath of Admission). The Oath of Admission, among other things, requires the following:
"I do solemnly swear:
"I will support the Constitution of the United States and the Constitution of the State of Florida."
See also Section 2, Article XVI, Constitution of Florida.
*669 Each attorney upon admission to practice in accordance with the rules becomes a member of The Florida Bar and an officer of the Court, and submits himself to such rules and discipline of the Court. Section 39.11 F.S.A.
The judiciary is one of the three departments of government. The very government under which we live depends upon the Constitution and the judiciary, and all members thereof must take an oath to support, protect and defend that Constitution.
There may be portions of the Constitution in which officers of the judiciary do not believe but nevertheless it is their duty to support, protect and defend such provisions as long as they are in the Constitution. If any particular part of the Constitution should be amended or eliminated, it should be done by amendment or repeal in the manner provided for in the Constitution itself and never by force or violence.
There may be those who do not believe in freedom of speech, press, or worship, or trial by jury, or the guarantees about search and seizure, but such provisions of the Constitution, or any other provisions, should not be eliminated by force or violence. If there is any judicial officer who does not believe in the American form of government or in the Constitution of our government, but rather believes that it should be supplanted by another form of government, such person may have the right to advocate such change in the manner provided for in the Constitution but not by force and violence.
No person can become a judicial officer without taking the oath to support, protect and defend the Constitution. It is urged that to ask such person the simple question at a later date whether or not he is, or ever has been, a member of an organization whose avowed purpose is the overthrow of this government by force and violence, invades his constitutional right of being compelled to be a witness against himself. Such a contention is just as logical as it would be to say that the prescribed oath could not be required of a judicial officer in the first place because it may invade his constitutional right.
The Fifth Amendment to the Constitution of the United States and Section 12 of the Declaration of Rights of the Constitution of the State of Florida provide that no person shall be "compelled in any criminal case to be a witness against himself." It will be noted that in each case the prohibition relates to "any criminal case". The appellant in this case has utterly failed to recognize the distinction between a criminal prosecution or a criminal case and a proceeding to disbar an attorney who is an officer of the judiciary. A disbarment proceeding is a civil proceeding and not a criminal proceeding. A lawyer has the inherent right to refuse to testify against himself under the Fifth Amendment to the Constitution of the United States and Section 12 of the Declaration of Rights of the Constitution of the State of Florida. This right was recognized by the Circuit Judge when he said:
"I concede his right, as it is the right of any witness, to refuse to testify under oath in response to a question when his answer may tend to incriminate him. He has that Constitutional right, but he doesn't have the Constitutional right to practice law; * * *."
No person has the absolute or inalienable right to practice law or become a member of the Bar. To be an attorney at law is a privilege or a franchise granted by the State and may be regulated in the interest of the public. A lawyer's responsibility is clothed with a sense of duty different from any other class in our society. His responsibility is, first, to support, protect and defend the Constitution and live up to the ethics of his profession, and his duty to his client does not compare with his duty or his responsibility to the Court and to his country. To be a member of the medical, dental, engineering professions or to be a licensed electrician, plumber, barber, or follow some other skilled trade or profession is a privilege, but those following such professions or callings have no such responsibility *670 resting upon them as those who exercise the privilege granted by the State of being an attorney at law, and, as such, an officer of the judiciary.
Although the Marshal of this Court is not an attorney at law, he is an officer of the Court. Before assuming his duties as such, he was required to take the oath that he would support, protect and defend the Constitutions of the United States and of the State of Florida. He was not compelled to take this oath but he could not exercise the high privilege of being an officer of this Court without taking such oath. The oath was required as a qualification for this high privilege. Our country is in a struggle with another power whose avowed purpose is to destroy this government by force or violence. This Court has the inherent power from day to day, week to week, or month to month, to ask the Marshal the simple question: Are you a member of any organization which has as its purpose the overthrow of this government by force or violence? The Court may not have the power to compel an answer but if the officer of this Court refused to answer such question, invoking the constitutional provisions about self-incrimination, this Court certainly has the power to withdraw the high privilege which had been granted to such officer. Under such circumstances the officer would have the choice of invoking his constitutional privilege of not answering, but by so doing have withdrawn from him the privilege of being an officer of this Court.
An illustration of the difference between a "right" and a "privilege" is that shown by Chapter 25046, Laws of Florida, 1949, which is now Sections 876.05 to 876.10, inclusive, F.S.A. The preamble to Chapter 25046, Laws of Florida, 1949, among other things, contains the following findings of fact:
"Whereas, there is a world movement under the domination of a foreign power which operates under the name of Communism, but having as its real objective the establishment of totalitarian dictatorship in all parts of the world under the domination and control of its central organization; and
"Whereas, such a dictatorship is characterized by the liquidation of all political parties other than the Communist Party, the abolishment of free speech, free assembly, and freedom of religion, and is the complete antithesis of the American constitutional form of government; and
"Whereas, the methods used by such a police state include treachery, deceit, infiltration into governmental and other institutions, espionage, sabotage, terrorism and other unlawful means; and
"Whereas, the World Communist movement is not a political movement, but is a world-wide conspiracy having sections in each country; and
* * * * * *
"Whereas, it is the finding of the Legislature of the State of Florida that the Communist Party is in fact and in truth not a political party but is rather and instead a union and organization whose members are devoted adherents to the doctrine and belief in the overthrow of the government of the United States and of Florida by force or violence;
"Now Therefore, the better to protect its government, its citizens and its schools from the infiltration of these conspiratorial fanatics whose first allegiance this Legislature finds to be not to the good of this State but rather to its forceful destruction, * * *."
Under this law Chapter 25046, supra, declared the policy that any person now or hereafter employed by the State or any of its departments, agencies, subdivisions, counties, cities, school boards and districts are required to take an oath that he will not lend any aid, support, advice, counsel or influence to the Communist Party, that he does not believe in the overthrow of the government of the United States by force and violence and that he is not a member of any organization which believes in or teaches directly or indirectly the overthrow of the government *671 by force or violence. The taking of such oath is a qualification for a person to become an employee but it does not qualify him to continue to be an employee forever. Section 876.07 F.S.A., provides that any person who having taken such oath and who thereafter should become a member of the Communist Party or a member of any organization which advocates the overthrow of the Government of the United States by force or violence shall immediately be discharged from his employment by the employing authority. If a person could be required to take the oath in question in order to be qualified as an employee and if thereafter he became an employee and then refused to answer the simple question, under oath, that he answered in the first place, it would become the duty of the employing agency to discharge such employee.
It has been argued that the State failed to prove by a preponderance of the evidence the guilt of appellant of the acts and conduct as charged. It was not necessary to prove anything which was admitted by appellant in his answer or in his testimony before the trial Judge. The evidence preponderated against the appellant at the instant he refused to answer the direct question propounded by the trial Judge, "Are you now a member of the Communist Party?" The essence of the fault lies not in the quantity of the evidence but in the quality. His immorality was then established. He had the constitutional right to invoke the immunity provisions of the fundamental law, but by so doing, he made his choice or election. He could not invoke this right and at the same time retain the high privilege which had been granted to him by the State to be an attorney at law and an officer of the Court because the exercise of such right is inconsistent with the moral obligations inherent within the oath to which he vowed allegiance. This oath imposes upon an attorney a continuing duty and sacred responsibility. He cannot in good faith subscribe to the oath and then at a later date refuse to answer the simple question "Are you now a member of the Communist Party?" thus calling upon him to state whether or not he is a member of an organization which teaches and advocates the overthrow of the government of the United States by force and violence. He is under a continuing duty and moral obligation to answer such a question and his failure to do so by invoking his constitutional right of immunity is sufficient as a matter of law and satisfies proof by a preponderance of the evidence.
In Petition of Florida State Bar Ass'n, 134 Fla. 851, 186 So. 280, 289, this Court said:
"In the third place, practice of the law is not an inherent right. It is a privilege or franchise granted by the state, and, being so, its exercise may be regulated in the interest of the public. In a democracy that interest is a peculiar one and the lawyer's responsibility is clothed with a sense of duty not found in any other form of society. The cardinal point in that responsibility is that in every professional relation, the lawyer's obligation and allegiance is first to country and second to client, and under no circumstances is he warranted in subduing the former to the latter. Some of the ablest lawyers in this country have in their zeal for client devised unwarranted ruses to circumvent the law and thereby sacrificed the confidence of the public." (Emphasis added.)
In Petition of Florida State Bar Ass'n, Fla., 40 So.2d 902, 908, this Court said:
"* * * It is hardly necessary to assert that the bar has a responsibility to the public that is unique and different in degree from that exacted of the members of other professions. This difference is symbolized in the requirement that every lawyer subscribe to an oath to support, protect and defend the constitution of the United States when he is admitted to practice."
Appellant, "like the quarry slave at night scurried to his dungeon deep" seeks solace in the recesses of constitutional immunities. However, the design of constitutional *672 privileges is not to aid the witness in vindicating his character but to protect him against being compelled to furnish evidence to convict him of a criminal charge. If he secures legal immunity from prosecution, the possible impairment of his good name is a penalty which it is reasonable he should be compelled to pay for the common good. Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819. In the face of such a question, men commonly do not remain mute but voice their denial with earnestness, if they can do so with honesty. Culpability alone seals their lips. Men with honest motives and purposes do not remain silent when their honor is assailed. As to the nature of his unspoken answer appellant's silence can lead reasonable men to only one inference. He solemnly swore to uphold and defend the constitutions of this state and the United States and demean himself in a manner befitting the office of trust and confidence reposed in him. He now refuses to affirm this oath. He declines to say that he is not, at this time a member of an organization which has for its avowed purpose the destruction of the very institutions which he calls upon to protect him. This position is irreconcilable, in every moral sense, to the oath of an attorney.
In the case of Lambdin v. State, 150 Fla. 814, 9 So.2d 192, 193, this Court said:
"* * * Practice of the law is an impersonal name applied to the mechanics of administering justice through the medium of judges and lawyers. The administration of justice is a service rendered by the State to the public and exacts of those who engage in it the highest degree of confidence and good faith. No service furnished by the State more vitally affects the public. We practice law by grace, not by right. The privilege to practice law is in no sense proprietary. The State may grant it or refuse it, or it may withdraw it from those who abuse it." (Emphasis supplied.)
The appellant does not stand before this Court on the issue as to whether or not it has been proved that he is a member of the Communist party or any other subversive organization. The only question presented is whether it was proved that the appellant was guilty of unprofessional acts which unfit him for association with the fair and honorable members of the profession.
It is clear that his refusal to answer questions propounded to him by the Court below justified the Order of Disbarment.
I therefore dissent and would affirm the judgment of disbarment.